## TURNER v. HAWKEYE TELEGRAPH Co.

1. **Evidence:** TELEGRAPH REPORT: CONNECTING LINE. Where a telegraph company undertakes to furnish market reports from a point beyond its own line, it will be presumed, in the absence of evidence to the contrary, that the report was correctly delivered to it at the place where its own line commences.

2. ———: ———. The burden is upon the telegraph company to show that a mistake in the report occurred from causes which would relieve it from liability.

3. ———: ———: CASE DISTINGUISHED. The case of *Sweatland v. The Ill. & Miss. Tel. Co.*, 27 Iowa, 435, differs from the one at bar in that the defendant's liability was restricted in the contract sued upon.

4. **Contract:** LIABILITY OF TELEGRAPH COMPANY. When a telegraph company contracts to deliver market reports, it binds itself to procure and furnish *correct* reports, and is responsible for the loss occasioned by any mistake in them.

5. **Practice:** FINDING BY THE COURT: EFFECT OF ERROR IN. That a finding by the court is not supported by the evidence will not justify a reversal when the judgment is in accord with other findings which have sufficient support in the testimony.

6. **Contract:** UNDERSTANDING OF THE PARTIES. Under a contract for the delivery of Chicago market reports to a grain dealer at Steamboat Rock, Iowa, who not only purchased grain at the latter place, but also made contracts for future delivery in the former, the injury suffered by him from the transmission of an incorrect report was in the contemplation of the parties at the time the contract was made, in such sense as to render the company liable in damages therefor.

7. **Damages:** MEASURE OF: MARKET REPORT. In an action against a telegraph company for damages for the delivery of an incorrect market report by reason of which plaintiff was induced to purchase a quantity of grain to fill a contract for future delivery: *Held*, that the measure of damages was the difference between the actual purchase price and the price as represented in the report.

*Appeal from Hardin District Court.*

MONDAY, OCTOBER 25.

ACTION to recover damages sustained by plaintiff on account of an incorrect telegraphic report of the price of wheat in

Chicago sent him under a contract with defendant to furnish daily reports of the market at that city. The cause was submitted to the court without a jury and, upon a finding of facts, judgment was rendered for plaintiff in the sum of $1614 45-100. Defendant appeals. The facts of the case appear in the opinion.

*Brown, Stone & Sears,* for appellant.

Telegraph companies are bound only to the diligence of good specialists in the particular department. (Wharton on Neg., 755.) To recover, plaintiff must show that the error was attributable to the *fault* of the company. (*Sweatland v. Ill. & Miss Tel. Co.*, 27 Iowa, 435.) The proof of the fact alleged to constitute negligence is not sufficient to entitle plaintiff to recover; negligence itself must be affirmatively shown. (*U. S. Tel. Co. v. Gildersleeve*, 29 Md., 232.) Damages must be the natural and necessary consequences of the breach of the contract in the minds of the parties at the time. When a special purpose is known to one party and not to the other, that purpose will not be considered in estimating damages. (*Baldwin v. U. S. Tel. Co.*, 45 N. Y., 744; *Griffin v. Colier*, 16 N. Y., 494; *Hibbard v. W. U. Tel. Co.*, 33 Wis., 538.)

*Porter & Moir,* for appellee.

When a telegraph company is paid for the transmission of a message beyond its lines, over others with which it is connected, it undertakes to deliver the message and the party injured can look to it for compensation. (*DeRutte v. N. Y. Tel. Co.*, 30 How., 403; *Bruce v. U. S. Tel. Co.*, 45 Barb., 274.) The rule that a company will send messages at half rates during the night on condition that the company shall not be liable for errors or delays is against public policy and cannot be enforced. (*Bartlett v. W. U. Tel. Co.*, 62 Me., 100.) As to measure of damages, see *Manville v. W. U. Tel. Co.*, 37 Iowa, 214; *True v. International Tel. Co.*, 60 Me., 9; *U. S. Tel. Co. v. Winger*, 55 Penn., 262.

BECK, J.—Plaintiff is a grain dealer doing business at Steam Boat Rock, Hardin county, and the defendant is a corporation operating a telegraph line from Albia to Northwood, having an office at plaintiff's place of business. The defendant contracted to furnish plaintiff at Steam Boat Rock daily dispatches, showing the prices of grain, both in Chicago and New York, for the consideration of ten dollars per month. Under this contract, on the 17th day of August, 1874, the defendant's agent delivered to plaintiff a dispatch showing the market price of wheat in Chicago to be $1.21½ per bushel. This report was incorrect; on that day the price was $1.56. Upon the strength of this information, plaintiff directed his commission merchants at Chicago, by telegraph, to purchase 5,000 bushels of wheat, to fill a contract for the delivery of that quantity during the month of August. Under this order the purchase was made on the 19th, the intervening day being Sunday, at the price of $1.50 per bushel. August 20th the price of wheat dropped to $1 12, and on the following day it was $1.12½. The price of the grain under plaintiff's contract to deliver the 5,000, was $1.32 per bushel. Plaintiff claims to recover as his damages, the difference between the value of the grain at $1.50, the price paid by him, and $1.21½, the price as reported by defendant, being 28½ cents per bushel, which makes the total sum upon 5,000 bushels purchased, $1,425. This sum, together with interest thereon, he claims, is the measure of his damages.

The court found the contract declared upon, and facts as above set out, and further that "the defendant's telegraph line was not in good, perfect working order, and the dispatch delivered and furnished to plaintiff was not correctly transmitted on account of the negligence and want of care of defendant and their (its) agents and employes." Judgment was rendered for the sum of $1,425, the difference between the price of wheat as reported, and the price paid by plaintiff for the $5,000 bushels, purchased to fill his contract.

I. Defendant's counsel insist that the finding of the court is in conflict with the evidence and the law. They, among other objections to the judgment, insist that there was no

Turner v. Hawkeye Telegraph Co.

proof of the negligence of defendant; that the burden of
establishing negligence in sending the dispatch,
reporting the price of grain, rested upon plaintiff,
and as he offered no sufficient evidence of that fact,
he failed to make out a case against defendant. The point may
be briefly disposed of. Defendant's line of telegraph did
not extend to Chicago, but at Grinnell it connected with
another line reaching to that city, from which the market
reports were obtained, and sent by defendant to different
points on its line. It is insisted by defendant that plaintiff
failed to show that a correct report was furnished, to be sent
from Grinnell upon defendant's line. The evidence shows that
the market reports were received at Grinnell on the day the
incorrect one was delivered to plaintiff. Upon this evidence
we must presume that the reports received there and delivered
to defendant were correct. The rules of evidence, in the
absence of proof showing the report delivered to defendant at
Grinnell to be either correct or incorrect, require us to pre-
sume it to have been correct. They are based upon the fact
that men ordinarily, in the course of business, act correctly
and speak truly. Errors and intentional misstatements are
exceptions, and not the rule in the affairs of business. Their
application in this case is demanded by the fact that the evi-
dence to establish error in the report furnished defendant was
within its control and exclusive knowledge   Plaintiff was
utterly unable to prove the correctness of the report furnished
at Grinnell, while, if it had been incorrect, defendant could
have readily established the fact. Still another reason may be
assigned in support of our ruling upon this point. The agent
of defendant, as he testifies, destroyed all the memoranda and
papers in his office at Grinnell, pertaining to the transaction.
These, it is presumed, would have shown whether the report
was correctly made to defendant. This circumstance, without
satisfactory explanation of the cause for this act, raises a pre-
sumption against defendant, as it is hardly reasonable to sup-
pose that the papers would have been destroyed, if they had
contained evidence relieving defendant of the charge of negli-
gence.

*1. EVIDENCE: telegraph re- port: connect- ing line.*

II. Counsel insist that the evidence is not sufficient to 2. charge defendant with negligence. As we have seen, the presumption of the law is that the report received by defendant for transmission was correct. It must be presumed that ordinarily, by the exercise of proper care, it would have been correctly transmitted. The burden was then thrown upon the defendant to show that the error occurred from causes or conditions that relieved defendant of responsibility. As it was delivered to plaintiff in a correct form we are required to presume that the error resulted through negligence. *Bartlett v. Western Union Tel. Co.*, 62 Me., 209; Wharton on Negligence, 766, and authorities cited.

*Sweatland v. Ill. & M. Tel. Co.*, 27 Iowa, 435, does not 3. ——: ——: support the position of defendant. Under the
case distin- contract sued upon in that case, the defendant's
guished. liability was restricted. It was held that, under such restriction, the defendant was liable for want of ordinary care and the burden of proving negligence was upon the plaintiff.

III. Another view of the case, in our opinion, removes 4. CONTRACT: all doubt of the liability of defendant under the
liability of tel- evidence found in the record. The contract between
egraph com- the parties was not for the sending of messages
pany. but that defendant was to furnish plaintiff with daily reports of the grain market at Chicago and New York. These reports were not sent by a correspondent of plaintiff but, as we understand the record, were to be procured and sent by defendant from Grinnell or from some other place on their line. In this view of the case defendant was liable, even though the reports sent were incorrect, for it was charged with the duty of procuring them and liable consequently for any errors which destroyed their character as true reports. In undertaking to furnish reports of the market they bound themselves to furnish *true* reports, and they would be liable for sending those which would tend to deceive plaintiff, and thus subject him to loss.

IV. Defendant's counsel urge that the finding of the court to the effect that "defendant's telegraph line was not in good,

perfect working order," is not supported by the evidence.

**5. PRACTICE: finding of court: error in.** It may be conceded that this objection is well taken, yet it does not require the reversal of the case. The court correctly found, as we have seen, that the error in the report resulted from defendant's negligence. This would render it liable and sufficiently support the judgment. It was not necessary in order to entitle plaintiff to recover that in addition to defendant's negligence, it should be shown that its line was not in good order.

If we should, therefore, conclude that this particular finding is in conflict with the evidence, we would not be required to reverse the judgment.

V. The objection of defendant, which we consider in the last place, is directed at the damages allowed by the court. **6. CONTRACT: understanding of parties.** It is claimed that, as plaintiff was engaged in buying grain at Steamboat Rock and gave defendant no notice that the market report furnished was intended to guide him in purchases of wheat in Chicago, he cannot recover as damages the loss which he sustained by reason of the error in the despatch, in the purchase of the 5,000 bushels of wheat. Such damages, it is claimed, did not enter into the contemplation of the parties when the contract was made There is nothing in the evidence upon the subject further than that plaintiff was a purchaser of grain at Steamboat Rock, and that he sold in Chicago. It also appears that he made contracts for the delivery of grain at that city at a future day. All of his transactions were based upon his information of the Chicago market, and that he might have speedy and accurate information, he entered into the contract sued upon. It is within the ordinary course of business for a dealer in grain to make contracts for future delivery, and to depend upon future purchases to enable him to fulfill his obligation. These purchases are made whenever the grain can be had at a price offering an inducement to the dealer, and such purchases are often made by business men of this state in Chicago to fill their contracts for delivery in that city. These facts, it will be presumed, entered into the contemplation of the parties to the contract in suit. The defendant, then, cannot claim that it is released

from liability for the loss sustained by plaintiff on the ground of a want of notice of the transaction in which defendant used the information furnished by the report of the market. It appears to us that as defendant contracted to furnish reports of the Chicago grain market to plaintiff, it was sufficiently notified that plaintiff's transactions were to be in that market and there is no evidence raising a presumption that defendant was authorized to regard him as a seller only of grain there. These considerations dispose of the argument of defendant on this branch of the case.

VI. The damages awarded plaintiff appear to us to be no greater sum than will justly compensate him for the loss sustained. He was led to believe, by the dispatch delivered by defendant, the market value of wheat was $1.21½ per bushel. Upon that information he ordered the purchase of wheat, and was compelled to pay $1.50. He could have purchased within the time prescribed by his contract for the delivery of the wheat for even less than the price named in the false report upon which he acted. It was the cause of his paying 28½ cents more per bushel than he consented to pay, and 38 cents more than the price at which he could have purchased the grain within five days after its receipt. Certainly plaintiff suffered loss to the amount of the judgment through the fault of defendant. The District Court awarded him no more than compensation.

*7. DAMAGES: measure of.*

The foregoing discussion disposes of all questions raised in this case. The judgment is

AFFIRMED.