TARVER, administrator, *vs.* TORRANCE *et al.*

1. An administrator who fails in ordinary care, and thereby exposes money belonging to the estate which he represents to be abstracted from his person by pickpockets, is answerable for the loss. The verdict of the jury was warranted in this case, and there was no error committed by the court.

2. Unless the ground of objection to evidence is disclosed by the record, the admissibility of the evidence is not a question for decision by the Supreme Court.

April 27, 1888.

Administrators and executors. Negligence. Verdict. Practice in Supreme Court. Before Judge HINES. Jefferson superior court. November term, 1887.

Tarver, administrator of Torrance, cited the heirs of the estate before the ordinary for a settlement. An appeal to the superior court was taken by consent, and there was a verdict in favor of the heirs against the administrator for $355.60 with interest and $1,000 without interest. The real dispute between the parties was as to this $1,000, which the administrator claimed to have lost by robbery and that he should not be held to account for it. The evidence bearing on this question was, in brief, as follows:

There was an administrator of this estate in England. He had sent through an attorney of the estate in Georgia a check payable to the attorney, who went with the resident administrator to Savannah to collect the money. The attorney requested this in order that he might be paid a fee due him. At this time some attractions of special interest had drawn a tremendous crowd to the

city named, but this did not seem to have been the reason for these two parties' going, any further than to take advantage of reduced rates of travel. They went together to the bank, where, after some little trouble, the money was drawn by the attorney, his fee counted out and the balance paid over to the administrator. By request of the latter, the teller of the bank wrapped the money in two packages containing $1,000 each, leaving a balance of about $200. The administrator put the packages in his inside coat pockets, one on each side, and the balance in his vest pocket. He was advised to let the money remain in bank, but said he would deposit it with his factors, to whom he went and whom he asked to receive the money on interest, which they refused to do. He was then told by the attorney that there was no use in distributing the money then, as he was expecting more. At that time he had the money in the places where he first put it. The attorney then told him he could send the money by express or could put it in bank. He replied that he did not drink and could keep it safely; that he had carried thousands of dollars in that way and had never lost any of it. He afterwards stated, in the presence of this attorney and another friend, that he had received this money; but there was no one else in the room at the time. It seems that, after having communicated these facts to his friends (all of these occurrences being on the same day), he visited the parade ground in the city, but left before the crowd left, and went to the depot that night to take the train for home. He missed the train, waited for some time for a street-car (there being no crowd in the vicinity then) and finally boarded one with a friend, and while on the rear platform was pushed and jolted by a number of men, some standing thereon behind him and others coming through the car and pressing him in front.

He held his hands tightly across his breast and across his pockets. Suddenly the men jumped off the car, and he found that one of his packages was gone, together with his pocket-book, containing valuable papers and seven dollars of his own money. The pocket-book was in the pocket of his pantaloons. He immediately gave outcry, sought the police, offered rewards, but never recovered the money. He stated in his testimony that the reason he did not deposit the money or express it was, that he had frequently carried money in that way; that the heirs were poor and needed this money, and that he wanted to carry it to them and distribute it.

The only other evidence that it seems necessary to refer to was that of George Palmer, which was objected to by the administrator. He testified that the administrator asked him on the day he started to Savannah what was the best way of collecting the money and what to do with it, and he "suggested to place it in a bank or express it"; and that witness advised him to place it in bank and check it out as he needed it, or if he had immediate use for it, to express it to his home.

A motion for a new trial was made by the administrator on the following grounds :

(1)–(4) Because the verdict was contrary to law and evidence.

(5) Because the court erred in the following charge : If you find that the administrator did not exercise ordinary diligence in the preservation and protection of this money, and if it was stolen from him because of his lack of ordinary diligence in taking care of this money, he would be liable.

(6) Because the court erred in refusing to give the following charge : If the administrator lost the money by robbery, the law excuses him for it and will not hold him accountable for it, unless the heirs show that the

administrator contributed to the loss by carelessness and negligence on his part. The administrator may not have been extraordinarily careful and diligent, and yet not be liable for the loss. In order to make him liable, if he was robbed, it must be shown that he was wanting in ordinary care and diligence.

(7) Because the court erred in admitting the evidence of Palmer, above stated; no ground of objection being set forth.

(8) Because the verdict is contrary to law and justice in this: that according to the verdict, the entire fund in the hand of the administrator, as well as the $1,000 in contest, is to be distributed to the heirs, thereby casting the cost of citing them to settlement before the ordinary, as well as all subsequent costs, upon the administrator. [In the judgment entered up on the verdict in this case, it is provided "that the heirs pay costs of this proceeding"; and the administrator was allowed his usual commissions and the costs of letters of dismission and $15 attorneys' fees for filing the petition for citation.]

To the refusal of a new trial the administrator excepted.

CAIN & POLHILL and EVANS & EVANS, for plaintiff in error.

GAMBLE & HUNTER, *contra*.

BLECKLEY, Chief Justice.

1. That the administrator actually lost one thousand dollars in money belonging to the estate, by theft of the same from his person whilst he was upon a street-car in the city of Savannah, was established by the evidence, and the court fairly submitted to the jury the

question whether the loss resulted from his failure to exercise ordinary diligence. The jury could well have concluded that he was negligent, and that he ought to have taken better care of the money. The occasion was an unusual one, drawing a great crowd to Savannah, and rendering the danger from pickpockets very considerable. The administrator by his counsel cited, upon the rule of diligence, Code, §2326; 2 Story's Equity Jurisprudence, §1269; Stevens vs. Gage, 55 N. H. 175; s. c. 20 Am. R. 191; Carpenter vs. Carpenter, 12 R. I. 544; s. c. 34 Am. R. 544. Grant the rule stated in these authorities to be applicable, it was fully recognized by the court, and the trial was had under it. We discover no error committed by the court, or mistake made by the jury.

2. The evidence of the witness Palmᵥ. was objected to, but upon what ground was not stated, and the record does not disclose any ground of objection. We therefore decline to discuss it. Whether admissible or not, it seems to us to have done no harm.

Judgment affirmed.