## WOLFE v. HINES et al.

| 93   329|
100   502|

1. Under the facts set out in the bill of exceptions, the presiding judge was under no disability to preside in the case.
2. The terms of a will made in 1855, conferring a power of sale, being in this language: "I will that all my just debts be paid, and for this purpose I invest my executors with power in their discretion to sell such portion of my estate, real or personal, as may be deemed by them necessary for this purpose, either at public or private sale as may be best for the interest of my estate," and one of the executors having renounced and failed to qualify, the other, after qualification, could exercise the power alone. A conveyance of land by the executor made in 1862, reciting the power, and "that it is for the interest of the estate . . . . to sell the property hereinafter described, in order to pay the debts of the same," passed title to the purchaser as against one claiming under the will as a general devisee of a contingent remainder.
3. In order for the purchaser to be affected by a fraudulent exercise of the power on the part of the executor, either participation in the fraud or notice of it by the purchaser would have to appear.
4. The evidence offered by the plaintiff and excluded by the court, even if admissible, does not affirmatively appear to this court as material, the same not going far enough to affect the purchaser with notice, and no intention to offer additional evidence as to notice being announced.
5. Treating the excluded evidence as admitted, a proper legal valuation of all the facts would necessarily result in the conclusion that, by reason of the sale and conveyance by the executrix, the plaintiff's right in remainder was cut off; and hence there was no error in directing a verdict for defendants.          *Judgment affirmed.*

January 27, 1894.

Ejectment. Before Judge BARTLETT. Bibb superior court. April term, 1893.

On December 31, 1888, Mrs. Wolfe sued Hines *et al.* to recover certain land. The court directed a verdict for defendants, and plaintiff's motion for a new trial was overruled. One of the grounds of the motion is, that the presiding judge erred in ruling himself qualified to try the case. Plaintiff's counsel stated that the law firm of Dessau & Bartlett, of which Judge Bartlett had been a member, were counsel of defendants in four cases of

Mrs. Wolfe v. Johnson and others, being actions of eject-
ment in favor of plaintiff in the present suit, and the
property sued for being part of the same estate and in-
volving the construction of the same will (that of Robert
Freeman) as involved in the case at bar. Plaintiff urged
this disqualification before the case was begun. Before
the judge decided to try the case, Mr. Dessau was sent
for, and stated that Dessau & Bartlett had no connec-
tion with the case, had no interest in it directly or re-
motely, and never had, nor been consulted about it; that
he did not know any such case was pending; that it was
in no way connected with the cases defended by Dessau
& Bartlett, and no issue involved in this case was in-
volved in those cases; and that no question was made by
the defence, in the cases defended by him, as to the
powers of the executor, or the construction of the will
of Robert Freeman. The judge stated that he never had
any connection with or knowledge of this case, and did
not know such a case was pending until he saw it on the
docket; that it was true Dessau & Bartlett had defended
certain cases for lands in suits brought by Mrs. Wolfe,
but those cases had no connection with this, and no sim-
ilarity except that the plaintiff was the same, the defence
being entirely different, and they in no way depended on
and would not be affected by the result in this. Plain-
tiff's counsel did not insist that this and the other cases
were connected, or that Dessau & Bartlett ever had any
connection with this case; and when the case was set
for trial, stated, when the question was asked, that the
judge was not disqualified, that the case had no such
connection with the other cases as would disqualify him,
and that the defence to the cases defended by Dessau &
Bartlett was entirely different from that set up in this.
These facts were not denied by plaintiff's counsel, but
admitted.

The will of Robert Freeman was dated October 5th,

1855, and nominated his friend. Comer as executor, and his wife as executrix. It contained the provision quoted in the second head-note, and further provided, that all his estate, except such portion as might be sold for the payment of his debts, be kept together and managed by his executors, for the support of his family and education of his children during the life and widowhood of his wife; that if his wife should again marry, then his estate should be equally divided between his wife and children, but should she remain in widowhood, at her death the estate to be divided equally among the children, children of deceased children to stand in the place of the deceased parent; that in the event distribution should take place during the minority of any of the children, he appointed his brother to act as testamentary guardian of the property of such minors; that the property by the will given to the children was in trust for their sole use during their lives, with remainder to their children, etc., his brother being appointed trustee to hold the legal title during the estate for life and the preservation of the remainder; that if his wife should be *enceinte* at the time of his death, the after-born child was to be entitled as if born before his death; and that the property given to his wife on the event of her marriage was for her sole and separate use in life, and to be disposed of at her death in such manner as she might direct. The deed referred to in the head-note, from Mrs. Freeman to Anderson, was dated June 12th, 1862; it was signed "Harriet B. Freeman," but recited that it was between Mrs. Freeman as executrix of Robert Freeman, and Anderson. It further recited that Freeman, by his last will, duly proved and recorded, "did fully authorize and empower his executors therein named, in their discretion, to sell any part of his estate, real or personal, at public or private sale, for the purpose of paying his debts," and appointed Mrs. Freeman and

Comer his executors, and Comer having disclaimed the trust, and she having alone qualified and entered upon the execution of the will, "and in the exercise of the discretion in her reposed, the party aforesaid of the first part having determined that it is for the interest of the estate of the said Robert Freeman to sell the property hereinafter described, in order to pay the debts of the same : now therefore," etc.   It is assigned as error that the court admitted this deed in evidence, over plaintiff's objection on the grounds, that the power of sale under the will was reposed in the joint discretion of the widow and Comer, who were joint executors ; that the power was to be construed according to the law in force in 1865; that such power of sale, without order of court, could not be exercised singly by Mrs. Freeman, who (as had been proved) alone qualified as executrix : that one executor could not, under the will, make a deed without order of court, and no such order was shown.   Further, that plaintiff, not being a party to the deed or claiming under it, is not bound by any recitals of fact therein, and that the recitals of the deed as to the existence of debts are not evidence, as against plaintiff, of their existence.   Also, that the deed upon its face did not show that Mrs. Freeman, executrix, had power to make the sale for the purpose therein expressed, the recital not following the power created in the first item of the will, and it not appearing from such recitals that she sold the property for the sole purpose of paying debts of the testator, nor such debts as are contemplated by the third item of the will, nor that it. was necessary to sell the property or so much of it for the purpose of paying said debts, but only that the sale was deemed to be for the interest of the estate in order to pay the debts of the estate; that no debts were shown to have existed at the time the deed was made, and the deed was inadmissible until the indebtedness was shown ; that the burden was

on the defendant to show this, and the length of time
that had elapsed raised a presumption that the debts of
the testator had all been paid, if any ever existed. Also,
that the deed was signed by Mrs. Freeman individually,
and not as executrix.

The court admitted in evidence the deed from the ad-
ministratrix of Anderson, deceased, to Hines, dated April
6th, 1890, over plaintiff's objection that the deed upon
its face purported to be an administrator's deed, and
there was no authority shown for the administrator to
make it. This deed contained a recital that the ordi-
nary had authorized the administratrix to make the sale,
that legal notice had been given, the property sold ac-
cording to law, etc. It appeared that Hines went into
possession immediately after the date of the deed, and
has occupied the property ever since, fencing it in and
improving it, and his possession has been open, uninter-
rupted and adverse.

The court refused to admit testimony of Benson, that
from his knowledge and acquaintance of the estate, it
was not indebted to any considerable extent; that he
was familiar with the place in 1862, went there a good
deal, and did not know of the existence of any debts;
that from 1856 to 1862 he was nearly as well acquainted
with this estate as with his own; and that witness's
father transacted a good deal of business with Freeman,
and at that time witness never heard of his being in-
debted. Also, testimony of the same witness, going to
show what amount of land and personal property be-
longed to Robert Freeman in 1856; the amount and
value of property sold between 1856 and 1862; how
much of the property of the estate was turned into
money by the executrix prior to 1862; that when Free-
man died his estate was in good condition; and that Mrs.
Freeman was very extravagant. Also, an inventory and
appraisement of the property of Freeman, as made by

duly appointed appraisers and returned to the ordinary's office on March 20, 1856, containing an enumeration of the items and value of the property, amounting to $57,-704.21. Also, the annual returns of Mrs. Freeman as executrix, made to the ordinary in 1864, and covering the period between the sale to Anderson and the date of said return. Plaintiff contended that the excluded evidence was relevant and material to show, that no debts of Freeman remained unpaid at the time of the sale to Anderson; that the debts owing by Mrs. Freeman in 1862, if any, were created by her after the testator's death, and were not embraced in the class of debts contemplated by the will; and that the circumstances were such as to put any purchaser on inquiry; and therefore the sale by the executrix to Anderson was unauthorized and passed no title.

STEED & WIMBERLY, ALEXANDER & TURNBULL and F. A. ARNOLD, for plaintiff. ANDERSON & ANDERSON and R. K. HINES, for defendants.