THE WESTERN UNION TELEGRAPH COMPANY *v.* MICHELSON.

1. Nothing in interstate law, whether constitutional or statutory, offers any impediment to enforcing the statute of Georgia imposing upon telegraph companies a penalty for not transmitting messages, the message involved in the given case not having been even started to its destination, and thus the whole of the negligence by which the statute was violated having occurred within the territory and jurisdiction of the State.

2. Any question as to complying with special contract terms touching presentation of claim or making demand, or the time of so doing, does not arise where the default sued for is failure to start the message. A contract which one party abandons without excuse or justification cannot be enforced against the other.

3. The settled rule that the objection to evidence which was made and decided below must appear, and that the evidence improperly admitted must be set out either in the motion for a new trial or the bill of exceptions, applies to several of the grounds of the motion in this case, and therefore these grounds are not considered. The charge of the court was free from error, and there was no error in denying a new trial.      *Judgment affirmed.*

April 30, 1894. Augued at the last term.

Action for penalty. Before Judge SWEAT. Glynn superior court. May term, 1893.

The sender of a message from Brunswick, Ga., to New York, sued the telegraph company for the statutory penalty for failure to transmit and deliver the same, to wit: "Aug. 20, 1892. To J. David, 250 West 128th St., New York. Hetty and children will arrive by Mallory steamer Monday morning nine o'clock." This was written on one of the company's blanks for a night mes-

sage, and was marked as filed at 10 P. M., "check 12, paid 34." This blank contained the following: "Send the following night message subject to the terms on back thereof, which are hereby agreed to." On the back was the following: "The . . company will receive messages to be sent during the night, for delivery not earlier than the morning of the next ensuing business day, at reduced rates. . . The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within thirty days after the message is filed with the company for transmission." The suit was brought on November 15, 1892.

In the plaintiff's testimony the following appears: Hetty and children referred to in the telegram are my wife and children. J. David is my father-in-law, who resides in New York city, within three blocks, each 180 feet in length, from an office of defendant. Miss Cleminson is the agent and manager of defendant in Brunswick. She wrote me a note about this telegram, and afterwards came to see me in person when I had got a dispatch from my wife after her arrival in New York. I went to defendant's office in Brunswick on Tuesday following the Saturday night I had delivered the message to defendant for transmission. I found Miss Cleminson there, and she, after searching, found the dispatch which I had sent to the office on Saturday night. She offered me the money which I had paid to have the message transmitted, saying she was sorry there had been a failure to transmit it. I refused to take the money. That is the telegram Miss Cleminson found, and that is the note I received from her. I did not send any other telegram that day. I carried that note to her, and she said she had written it to me. I paid 35 cents, the charge for the transmission of the telegram, to the defendant. Miss Cleminson told me the telegram was never sent from Brunswick by defendant. She said it

had been laid upon a desk and accidentally overlooked, and that it was a mistake of one of the young men employed in the office. My book-keeper wrote the telegram by my direction, and I sent it to the telegraph office by my porter to whom I gave the money for sending it. The message was delivered to the defendant between 10 and 11 o'clock Saturday night by sun time. Defendant had no contract with me to deliver this telegram on Sunday morning. I simply delivered it to them to be transmitted and delivered. I supposed it would be delivered on Sunday. The porter left my store for the telegraph office about half past 10 o'clock sun time, and returned in about five minutes. He did not bring the telegram back with him. That is my signature to the demand made on the defendant for the payment of the penalty and damages for the failure to transmit and deliver the telegram. I delivered a copy of this paper to Miss Cleminson on the 17th day of September, 1892. I am sure that my father-in-law has not instituted suit against this company. He never said anything to me about it. I have not heard anything from him about it. —The copy of the demand just referred to appears in the brief of evidence. The note from Miss Cleminson to plaintiff, identified by him, states, "I refund you the 34 c. for msg. Will also refund for your wife's msg. and your answer, if you wish. Please sign rect." No witness other than the plaintiff testified.

The jury found for the plaintiff, and defendant's motion for a new trial was overruled. The motion alleges that the verdict is contrary to law and evidence, and sets forth the following special grounds:

Error in not sustaining a motion for nonsuit on the grounds: (a) That the message was an interstate message for transmission and delivery from Georgia to New York, and therefore the cause of action was one of which this State had no power to take cognizance or to pass

any law to regulate or enforce, but the same was within the operation and wholly controlled by the third clause of section 8, article I, of the constitution of the United States. (Code, §5266.) (b) It did not appear that the plaintiff was the first to sue for the penalty, or that no action therefor had been brought by the sendee, although plaintiff's declaration so alleged. (c) It appeared that the message was delivered on Saturday night to be transmitted by the company during that night and delivered to the sendee on the Sabbath day, and not being a work of necessity or charity, the contract between the parties was void, and defendant was not liable for the penalty.

The court allowed plaintiff, over defendant's objection, to testify as to the admissions alleged to have been made to him by Miss Cleminson, "said admissions having been made some days subsequent to the delivery, or the alleged delivery, of said telegram in behalf of the plaintiff to the defendant, and which said statements of Miss Cleminson are fully set out in the brief of evidence offered in said case, filed herewith and made a part of this motion."

The court erred in allowing the plaintiff to read to the jury and place in evidence the note signed by Miss Cleminson individually, "a copy of which is to be found in the brief of evidence offered in said case, filed herewith and made a part hereof, and to testify concerning the same, the said note not appearing to have been made or written by Miss Cleminson as the agent of, or at the instance of, or for and in behalf of said defendant, but simply appearing to be the individual act of Miss Cleminson; to all of which defendant then and there objected."

The court erred, after the close of the testimony, "in permitting the plaintiff to reopen the case, and to offer in evidence, and to permit the plaintiff to testify in person concerning the making of the demand upon the

defendant for the payment of the sum sued for by him. in his declaration in said case, a copy of which said demand is to be found in brief of evidence offered in said case, filed herewith and made a part hereof. To the reopening of which case, the defendant then and there objected, and to the admission of which testimony of plaintiff, and the introduction of the copy of said demand, the defendant likewise then and there objected, the same not being the original demand served upon the defendant, but expressly alleged to be a copy, and it not having been made first to appear that said original was lost or could not be found and obtained, and there being no evidence in writing of the service of such original demand upon defendant; to the introduction and reception and admission of all which the defendant then and there objected."

Error in the following instructions to the jury: "You may take all of the testimony which has been submitted to you; the testimony upon the part of the plaintiff as to whether this message was written by his clerk and signed by his authority and was delivered to his porter with money to pay the charge; as to whether the porter left the store with instructions to go to the Western Union Telegraph office; whether he returned soon thereafter; whether it was Saturday night or not, and in the usual office hours for that kind of business; and you are likewise authorized to take any and all admissions which it has been shown the agent of the defendant, the Western Union Telegraph Company, may have made concerning this matter; and from all this, find the truth in reference to this case, as to whether the plaintiff has sustained by necessary proof the allegations as made in the declaration, and is authorized to recover under the law which the court has given you.

"It is claimed by the plaintiff in this case that on August 20, 1892, he caused to be delivered at the office

of the Western Union Telegraph Company in Brunswick, Ga., a certain dispatch to be forwarded by that company, together with the amount of money necessary to pay the charges therefor; that the dispatch in question was not sent at all; that it was received at the office on Saturday night, together with the money to pay the charges, and was permitted to remain there without being forwarded, as was the duty of the telegraph company to have done with promptness and dispatch and with impartiality as required by law; that the plaintiff himself called at their office on the following Tuesday, found his message still there, and that it had not been sent by the telegraph company. Now, gentlemen of the jury, if you find this claim upon the part of the plaintiff to be true, then the court charges you that, under the law, the defendant telegraph company would be liable for the penalty of $100 as provided in the law which the court has read to you; otherwise, the defendant would not be liable, and you would not be authorized to find a verdict in favor of the plaintiff and against the defendant."

CROVATT & WHITFIELD, for plaintiff in error.
SYMMES & BENNET, contra.