THE WESTERN UNION TELEGRAPH COMPANY *v.* HOWELL.

1. According to the principle ruled by this court in the cases of *Western Union Telegraph Company* v. *James*, 90 *Ga.* 254, and *Western Union Telegraph Company* v. *Michelson*, 94 *Ga.* 436, there is nothing in that provision of the constitution of the United States, which confers upon Congress the power to regulate commerce among the several States, prohibiting the General Assembly of this State from enacting a law subjecting telegraph companies to penalties for acts of negligence occurring entirely within the limits of Georgia, although such acts may be committed in dealing with messages which are to be transmitted to points in other States.
2. Where a message, the charges upon which were duly paid in advance, was received by a telegraph company at one of its offices in this State for transmission to a point in another State, and was never delivered to the person to whom it was addressed, it is incumbent on the company, in order to escape liability for the statutory penalty for negligence in transmission from the Georgia office, to show that the message was in fact transmitted from that office with due diligence, and that the non-delivery to the sendee was due to some default, or other cause, arising beyond the limits of this State.

December 21, 1894.

Action for penalty and damages.    Before Judge CLARK.    DeKalb superior court.    February 23, 1894.

Howell sued the telegraph company for the statutory penalty, and for special damages, because of its failure to deliver with due diligence to his brother in Montgomery, Alabama, a telegraphic message which plaintiff

alleged he delivered to defendant's agent at Lithonia, Georgia, for transmission to said brother, paying the full amount charged therefor; and for failure to duly forward the telegram to the relay office in Atlanta, or from Atlanta to Montgomery, Alabama. Defendant demurred to that part of the declaration which claimed the penalty, upon the ground that the act of the legislature giving a penalty, so far as the same may be intended to affect telegrams to be transmitted to places in another State and be there delivered, is repugnant to the clause of the constitution of the United States granting to the Congress of the United States sole power to regulate commerce between the different States, and is therefore void. The demurrer was overruled. There was a verdict for plaintiff for the penalty, and for $20 special damages. The message in question was: "I am in jail. Stop over at Decatur, Ga. When come?" The declaration alleged that the message was sent to plaintiff's brother, in order that the latter might meet plaintiff at Decatur and sign an appearance bond for him. Plaintiff testified that he gave the message to the company's agent at Decatur, and paid to him the charges asked for sending it to Montgomery. The brother testified that the message was never delivered to him; that both his residence and place of business were near the telegraph office in Montgomery; and that on receipt of a letter from plaintiff, three days after the message had been delivered for transmission, he went to the telegraph office in Montgomery, and there had been no message for him at all. By a witness in defendant's employment, it was shown that the usual course for such a message was to send it first to Atlanta, which was a relay office, and thence to Montgomery.

Defendant excepted to the overruling of the demurrer, and to the following rulings:

Refusal to charge: "The act of the legislature of

Georgia giving a penalty against telegraph companies, in so far as it attempts to visit a penalty upon not transmitting and delivering a telegram to another in Alabama, is repugnant to the clause of the constitution of the United States granting to the Congress of the United States sole power to regulate commerce between the States, and is therefore void, and the plaintiff cannot recover said penalty."

The court charged the jury thus: "If there is evidence before you, and you believe it, that the telegraph message was sent, but not delivered, then he could not recover in this State for it, as the Supreme Court of the United States has said that our statute upon that subject is unconstitutional as interfering with the commerce between the States; but I hold that if the question rests upon the non-sending of the telegram, that then the plaintiff is entitled to recover such damages as under the law he is entitled to. While a recovery could not be had for the non-delivery in the State of Alabama, yet, if you should believe that the telegraphic message was not delivered in Alabama, that is a circumstance for you to consider in coming to a conclusion as to whether or not it was sent. If you believe the message was not sent, and that in other respects he is entitled to recover, then he would be entitled to recover at your hands the penalty which the law places upon the company for not sending the telegraphic message." These instructions were alleged to be error, defendant contending that by reason of the conflict between the statute and the constitution of the United States, there could be no recovery of the penalty.

BIGBY, REED & BERRY and DORSEY, BREWSTER & HOWELL, for plaintiff in error.    JOHN S. CANDLER, contra.

LUMPKIN, Justice.

The facts appear in the reporter's statement.

1. The case at bar, so far as relates to the proposition announced in the first head-note, is not distinguishable in principle from those of *Western Union Telegraph Co.* v. *James,* 90 *Ga.* 254, and *Western Union Telegraph Co.* v. *Michelson,* 94 *Ga.* 436. We have, therefore, felt constrained to follow those cases. As no opinion was written in either of them, the writer, but for a reason which will be presently stated, would feel it incumbent upon himself to endeavor to set forth with some care the views upon which these decisions rest. It is obvious that to do so would require the consumption of much time and the expenditure of a considerable amount of labor, as the subject is one which has but lately arisen, and is not free from doubt and difficulty. Inasmuch, however, as the General Assembly of this State, four days before the present case was decided by this court, repealed the act imposing penalties upon telegraph companies (Acts of 1894, p. 79, repealing both the statute of October 22, 1887, and the amendment thereto of December 20, 1892), and, in consequence, the question is no longer of practical importance in this State, it is not now deemed necessary to enter into an elaborate discussion of it. The time at our command can certainly be more profitably expended in preparing opinions, so far as we are able, devoted to the discussion of questions which are live issues, and are likely to arise in future litigation. We shall therefore content ourselves with citing the case of Connell *v.* Western Union Telegraph Co., 108 Mo. 459, 39 Am. & Eng. Corp. Cas. 594, which supports the view entertained by this court, although the subject is not dealt with at any great length, nor accorded the thorough and satisfactory discussion which its importance would seem to demand. It may, nevertheless, be very profitably examined, for, so far as we have been able to discover, it is the only decision outside of this State which has, as yet, directly dealt with

the question. Reference may also be made to the American & English Encyclopædia of Law, vol. 25, p. 768, where in a note the Connell case is cited; and also to page 770 of the same volume, where, at the conclusion of note 3 (which begins on the preceding page with the title, "Regulation of Interstate Messages"), comments and expressions in full harmony with the view of the question taken by this court will be found, together with references to cases more or less in point.

2. Counsel for the telegraph company, while not conceding its liability in any event, contended that as the plaintiff had failed to show that the omission of duty on the part of the company occurred within the limits of this State, he could not recover even under the rulings announced in the *James* and *Michelson* cases. We quite agree with counsel that our penalty statute could have no extra-territorial operation, but are compelled to express our dissent to the assertion that the plaintiff totally failed to make out a *prima facie* case of negligence on the part of the company occurring within the borders of the State. The matter simply resolves itself into a question of burden of proof, and appears to us to be free from serious difficulty.

The rule as to telegraph companies seems to be the same as that applicable to railroad carriers. Proof of the delivery to a telegraph company of a message, non- (or incorrect) transmission of it, and consequent damage, is all that is required to make out a *prima facie* case of negligence. Thomp. Elec. §§266, 275 ; 25 A. & E. Enc. of Law, 831; Whart. Negl. §766; 3 Suth. Dam. 295, 2d ed. 2140 ; Gray, Com. by Tel. §§26, 53, 54, 77. Breach of the contract is presumed to comprehend negligence. This, as stated by Boynton, C. J., in Tel. Co. *v.* Griswold, 37 Ohio St. 313, for the reason that: "If the error or mistake is attributable to atmospheric causes or disturbances, or to any cause for which the company is not

at fault, it is entirely within its power to show it.   To require the sender of the message to establish the particular act of negligence, or ferret out the particular locality where the negligent act occurred, after showing the mistake itself, would be to require, in many cases, an impossibility, not infrequently enabling the company to evade a just liability."

In Turner *v.* Hawkeye Tel. Co., 41 Iowa, 458, 20 Am. Rep. 605, the court dealt with the question of presumption in a case where a message delivered by one telegraph company to another which was sued for error in transmission, was not shown by the plaintiff to have been different from the one delivered to him.   Beck, J., says: "Defendant's line of telegraph did not extend to Chicago, but at Grinnell it connected with another line reaching to that city, from which the market reports were obtained, and sent by defendant to different points on its line.   It is insisted by defendant that plaintiff failed to show that a correct report was furnished, to be sent from Grinnell upon defendant's line.   The evidence shows that the market reports were received at Grinnell on the day the incorrect one was delivered to plaintiff.   Upon this evidence we must presume that the reports received there and delivered to defendant were correct.   The rules of evidence, in the absence of proof showing the report delivered to defendant at Grinnell to be either correct or incorrect, require us to presume it to have been correct. They are based upon the fact that men ordinarily, in the course of business, act correctly and speak truly. Errors and intentional misstatements are exceptions, and not the rule in the affairs of business.   Their application in this case is demanded by the fact that the evidence to establish error in the report furnished defendant was within its control and exclusive knowledge. Plaintiff was utterly unable to prove the correctness of the report furnished at Grinnell, while, if it had been

incorrect, defendant could have readily established the fact."

Again, in Olympe de La Grange v. Southwestern Tel. Co., 25 La. An. 383, it was contended that the defendant was not the first carrier or contractor, and that it was not proved that the error in the transmission occurred on defendant's line, on whose printed blank there was an express provision for non-liability for the default of other companies. But it was held, "that whether first carrier or not, it was peculiarly within their power, and was their duty, to make the proof here suggested, if necessary."

Surely, the two cases last cited go further than is requisite to support our ruling in the present case; for where a third party is also concerned, the further question is presented whether it was not in the power of the plaintiff to show that such third party in dealing with the message was free from negligence.

In the case at bar, the plaintiff showed a breach of contract—and *prima facie* negligence—which must have occurred on the defendant's line, either in this State or in Alabama. Undoubtedly, it was in the exclusive power of the telegraph company to show the exact point where the failure of diligence occurred, and through the negligence of what particular servant it was occasioned. It will not do to say that the servants of the company are equally at the disposal of the plaintiff to prove the facts connected with the transaction. The truth of this assertion may be demonstrated by the peculiar facts here presented. The plaintiff, it is true, did know the company's agent at Lithonia, and perhaps could have secured him as a witness at the trial. But suppose this had been done and he had testified that he had promptly forwarded the message to the relay office at Atlanta, but had no further knowledge as to the transaction, how could the plaintiff pursue his

investigation and proof? Would he have to sue out interrogatories—for he could not compel personal presence in another county—directed to each and every one of the numerous employees of the company stationed in the Atlanta office? Certainly, the company could not reasonably be expected to aid him by furnishing a list of all its servants, nor to keep him posted when any of them resigned or were transferred elsewhere. It might be, and doubtless is, often convenient to the company to change the location of its employees and it could do so in the utmost good faith; but whatever the motive, the inconvenience to the plaintiff in reaching them as witnesses would be the same. Again, it cannot be known that the telegraph company keeps such records in writing of its business as would enable the plaintiff to show the required facts by compelling the defendant to produce its records in court. Besides, how would it be known that such records, if kept at all, were correct? If the company itself did not see to it that evidence of negligence was not recorded against it, would it not be a temptation to its employees to omit making any record of their own shortcomings which might result in their discharge? And at last, this would merely be a different way of compelling the company to supply evidence entirely within its own keeping. It follows from the foregoing, that the default should be treated as having occurred in Georgia, the burden being on the defendant to show the contrary, and it having failed to do so.

Finally, the plaintiff showed more than a mere failure to deliver. His brother, the addressee, who lived in Montgomery, testified: " I went directly to the telegraph office, as soon as I received my brother's letter, and there had been no message for me at all. The telegram was sent on Thursday. I received my brother's letter on Sunday morning at 9.30." Therefore, it was shown that *three days* after the message was handed to the agent at

Lithonia, the office in Montgomery had still failed to receive it over the wire from Atlanta. This being so, it makes no difference whether the message was afterwards sent or not. Three days delay in Georgia (unexplained) would render the company liable to the penalty, for this would be undoubtedly and *per se* an unreasonable and inexcusable delay; and even if the office in Montgomery had afterwards received the message, and had made no attempt to deliver it to the addressee, these facts would be of no consequence whatever with reference to the question of the company's liability for the penalty.                                  *Judgment affirmed.*