## STEWART v. BANK OF SOCIAL CIRCLE.

1. That evidence was admitted over the objection of the party complaining affords no reason for the grant of a new trial, when it does not appear that any specific objection to its admission was made at the trial.

2. That evidence was excluded upon motion affords no reason for the grant of a new trial, where the same is not set out in the

motion so as to enable the court to say whether or not the same, if admitted, would have been relevant and material.

3. A trial judge commits no error in directing a verdict which is demanded by the evidence. In the present case the verdict directed was so demanded.

Argued February 18,—Decided March 8, 1897.

Complaint. Before Judge Norwood. City court of Savannah. July term, 1896.

The Bank of Social Circle sued James T. and M. N. Stewart, doing a cotton commission business as James T. Stewart & Son, alleging that defendants were indebted to petitioner $119.43, besides interest from November 1, 1895, at seven per cent., for money had and received for petitioner's use. Petitioner alleged further, that on October 14, 1895, it wrote to defendants: "The lot of 144 B. C., AAA, shipped by E. Gresham, for which we have forwarded draft with B. L. for collection on you. The margin of $1.00 per bale left in this cotton, also the profit on sale, you will please place to my credit, as you have already been instructed by Mr. Gresham, which is to cover the margin furnished him here on same, and oblige"; signed by petitioner's cashier Mobley. To this defendants replied, on October 16, 1895: "We will send the difference, if any, held as margin of Mr. E. Gresham, Social Circle, as soon as the cotton is delivered." Said 144 bales were duly received by defendants and by them sold, and after paying the draft referred to and all expenses defendants had left in their hands $119.43, but contrary to their promise failed to remit said sum to petitioner's cashier or to petitioner, who was the real owner, said letters being signed by and addressed to the cashier only for the sake of convenience. After writing and making demand upon defendants, petitioner at last secured a statement from them showing that they were due petitioner $119.43 upon said lot of cotton, as will appear more fully by a summary (set out in the declaration), and by said statement of defendants, copy of which is attached.

After verdict in favor of the plaintiff for the amount sued for, defendants moved for a new trial on the grounds shown in the opinion; and the motion was overruled.

The testimony of Mobley, the cashier of plaintiff and its managing officer in its daily transactions, is as follows: Gresham is a cotton buyer and has been up to Social Circle, and in buying cotton the bank would pay for the cotton with an arrangement by which he would draw draft, bill of lading attached, on the party he shipped it to. In this instance there were 144 bales, and he made arrangements with defendants and drew on them for it. It seems in this particular instance he did not make arrangements about what he was to pay for the cotton. It would be the amount we had to furnish in cash for the cotton. It required him to leave $1 a bale, which would be $144 as margins, which is usual in this sort of transaction. They would owe him $144 more than the draft drawn against it, and in accepting that draft it left us with that much to look to the cotton for. We took the draft and wrote to defendants—I did for the bank; and when they delivered that cotton they would please credit us with the $144.00 or the difference, whatever it might be; and if it fell short of that sum we would be entitled to whatever it might be. The amount of the draft was $6,141. I acted for the bank; the business was for the bank and I had no personal interest in it. We advanced $144 more than the amount of the draft; when we accepted this $6,141 it left $144, that we had in cash against the cotton. Gresham would buy the cotton on the streets and furnish the seller a ticket which we would give to the railroad and have the cotton weighed, and the seller of the cotton would bring that ticket to the bank, and we would pay him the amount of the ticket in cash, and we would make settlement with Gresham. We had no book account of it; it was all transacted through cash. At the end of the day's transactions Gresham would come in and take up these tickets and give us a bill of lading with his draft attached, and we held these until the bill of

lading was used.  Bills of lading were handled in that way; the shipper of the cotton would endorse, and he did it in this instance.  We brought that to defendants' attention; we wrote them the same day the facts in the case.  This is Gresham's letter.  He wrote them the same day in reference to it.  This is the letter I wrote.  It was signed M. L. Mobley; it seems I omitted the cashier part of it.  I was not acting for myself but for the bank, and should have signed this as cashier just under my name.  We received an answer to this letter, dated October 15, 1895.  Defendants never sent the money to me or the bank, and still owe it.  From the account sales the amount is $119.43.  The account is correct.  The bank made a demand for that money.  I wrote them asking them how much they had for us.  It is not in the ordinary run of business that we pay for cotton that buyers buy.  I make arrangements with them for the bank.  I get drafts from the parties with bills of lading.  We made settlement daily of all transactions.  As far as Gresham is concerned no account appears.  I have known him to use his name as E. Gresham, agent.  I do not know but what we took business of this nature from him in his own name, if he furnished us a bill of lading in his own name.  I knew as matter of fact that he was irresponsible, and we did not put his name on our books except in forwarding drafts.  I received another letter from defendants after I wrote the November 4th letter, and think I answered it.  The reason I waited to answer that letter of Novmber 5th until November 18th was, that I wanted to see Gresham, who was away, and he turned that account sales over to us and I then wrote him.  The account sales was in account of Stewart & Son with E. Gresham.  I do not mean that Stewart & Son rendered any account to me.  I waited from time to time, thinking I might write defendants, hoping to see Gresham and to write them instantly.  I did not have any reason to believe that we were about to lose anything on it.  We frequently had drafts of Gresham protested.—Plaintiff in-

troduced the letter of October 14, and the reply of October 15, sufficiently set out above. Also, letter from Gresham to defendants, of October 14, 1895, stating: "I have your notice of selling 144 B. C., AAA, 8, 15-16, and all satisfactory. Please credit margin to M. L. Mobley, cashier, as he carries my account here; and should I sell you any more, of course it can hold good for any shortage. Now look after my interest; you have detail weights, and you will see I left 1-16 more than $1 a bale, and I will depend on your taking care of me."

*William R. Leaken,* for plaintiffs in error.
*Gignilliat & Stubbs,* contra.

LITTLE, Justice.

A statement of the facts will be found in the foregoing official report.

1. In several of the grounds of the motion for a new trial, error is assigned upon the rulings of the court whereby certain letters were admitted in evidence. The assignments made, as they appear in the record here, are, that the court erred in admitting these letters "over the objection of defendant's counsel." This court has repeatedly ruled that assignments of error to the admission of evidence cannot be considered by it, unless objection was made in the court below at the time the evidence was offered, and the specific ground on which such objection was put when made is set out in the motion. It has also ruled that the evidence improperly admitted must be set out either in the motion for a new trial or the bill of exceptions. The reasons for these rulings have been frequently given in previous adjudications, and therefore we deem it only necessary to make reference to some of the authorities so ruling. *Gardner* v. *State,* 94 *Ga.* 403; *W. U. Tel. Co.* v. *Michelson,* Id. 436; *Nat. Cash Reg. Co.* v. *Ison,* Id. 463; *Hamilton* v. *Williford,* 90 *Ga.* 210; *Benton* v. *Baxley,* Id. 296; *Clark* v. *Empire*

Co., 87 Ga. 742; Mayor of Griffin v. Johnson, 84 Ga. 279; Trice v. Rose, 80 Ga. 408; Nicholls v. Popwell, Id. 604; Tarver v. Torrance, 81 Ga. 261; Phillips v. Dewald, 79 Ga. 732; Scott v. Zachry, 62 Ga. 573; Hawks v. Hawks, 68 Ga. 832; Smith v. Hanie, 74 Ga. 324; Hart v. Slade & Etheridge, Hatcher v. Bowen, Id. 840; Peters v. West, 70 Ga. 344; Fisher v. State, 73 Ga. 595; Kirk v. State, Id. 620; Cain v. Ligon, 76 Ga. 102.

2. In another ground of the motion, error is assigned "because the court erred in rejecting the letter of Gresham to Stewart & Son, dated the — of —, 1895, and rejecting the letter from James T. Stewart & Son to M. L. Mobley, dated November 5th, 1895." The contents of these letters are neither set out in the motion for new trial, nor bill of exceptions, nor is any reference whatever to their character or terms made. The court is therefore unable to say whether or not the excluded evidence, if admitted, would have been relevant and material, and hence cannot consider this ground of the motion. W. U. Tel. Co. v. Michelson, 94 Ga. 436; Benton v. Baxley, 90 Ga. 296; Moore v. Brown, 81 Ga. 10; Askew v. Carr, Id. 685.

3. It is further urged that the court below erred in directing a verdict for the plaintiff. We are therefore to inquire whether the evidence submitted at the trial demanded the verdict directed. The record discloses evidence of the following facts: One E. Gresham was engaged in buying cotton at Social Circle, Ga. Stewart & Son were his cotton factors at Savannah, Ga.; that is to say, Gresham purchased cotton in the market and sold to them. By some arrangement with the Bank of Social Circle, Gresham's purchases were paid for by the bank, he in turn transferring to it the bill of lading covering the cotton purchased, and at the same time making draft on his factors for the value of the cotton, less one dollar per bale, which was left as a margin to the bank; and for the payment of such drafts it was to look to

the cotton. With reference to the particular transaction now in question, the undisputed evidence is, that Gresham shipped to Stewart & Son 144 bales of cotton, the aggregate invoice price of which was $6,289.23; Gresham drew through the bank on Stewart & Son for $6,141.00; there was a charge in favor of Stewart & Son, representing "half of turn-down charges on said cotton" of $7.20; also for commissions on 144 bales, $21.60, leaving a balance of proceeds of cotton in the hands of Stewart & Son of $119.43. It appears that on October 14th, 1895, Gresham wrote to Stewart & Son, directing them to credit this balance to M. L. Mobley, cashier, and that on the same date the latter wrote to them requesting such credit, in accordance with the instructions given by Gresham. It further appears that on October 15th, Stewart & Son wrote to Mobley, cashier, acknowledging receipt of the letters of instruction and request, and advising they would send to Mobley the difference, if any, held as margin on the shipment aforesaid. Mobley, among other things, testified that the bank had advanced to Gresham $144.00 more than the amount of the draft above referred to. Thus it appears that Stewart & Son held $119.43 as balance of net proceeds of the cotton in question, which amount Gresham had instructed them to turn over to the Bank of Social Circle, and they had by letter to the bank agreed to do so. No evidence whatever was introduced tending to modify or contradict these facts. It is accordingly apparent, that the only verdict which could have been legally rendered was that directed by the court. Indeed, the verdict directed was the inevitable and only legal result of the pleadings and evidence; and hence the court committed no error in giving such direction. *Wolfe* v. *Hines, Baxter* v. *Wolfe,* 93 *Ga.* 329, 335; *Faulkner* v. *Vickers,* 94 *Ga.* 532; *Hinkle* v. *Story,* 96 *Ga.* 776; *Riggs* v. *Jones,* 97 *Ga.* 420; *Faircloth* v. *Fulghum,* Id. 357; *Cothran* v. *City of Rome,* 77 *Ga.* 582; *Hobby* v. *Alford,*

73 *Ga.* 791; *Manning* v. *Mitchell,* Id. 661; *Hooks* v. *Frick,*
75 *Ga.* 715; *Williams* v. *McMichael,* 64 *Ga.* 445; *Dwelle*
v. *Roath,* 29 *Ga.* 733; *Wright* v. *Hicks,* 15 *Ga.* 160.

    *Let the judgment of the court below be affirmed. All the
Justices concurring.*