## J. C. O. MORSE v. M. L. RYLAND.

### No. 9877.

1. CORRECT INSTRUCTIONS MISLEADING — *in general scope, where propositions favorable to one party frequently repeated or unduly emphasized.* Instructions should be framed so as to present the law applicable to the facts developed by the evidence introduced on each side. Unnecessary repetition of instructions favorable to either party, and unnecessary emphasis of any particular proposition of law, should be avoided. The court ought fairly to present the law applicable to the theories of both parties, so far as they are supported by any evidence. The general scope of the charge given in this case is criticized and held misleading.

2. FRAUDULENT CONVEYANCE — *evidence of fraud may be circumstantial.* In an action of replevin to recover a stock of goods, held by the sheriff under attachment, which the plaintiff claims to have purchased from the person against whom the attachment was issued, where the defense of the sheriff is that the alleged purchase was fraudulent, it is error for the court to refuse to charge the jury that the defendant is not required to establish the fraud by direct and positive proof, but that it may be inferred from circumstances if sufficient to convince the jury of the fact of fraud.

3. ——— *purchaser charged with knowledge of fact which diligent inqiry, suggested by the circumstances, would have revealed.* It is also error to refuse to charge the jury that, in or-

der to avoid the sale, if fraudulently made by the vendor, it is not necessary to prove, that the purchaser had positive knowledge of the fraud, but that, if circumstances sufficient to put a prudent man upon inquiry are shown to have been brought to the knowledge of the purchaser, he will be charged with knowledge of all such facts as a diligent inquiry would have disclosed.

Error from Sumner District Court. Hon. J. A. Burnette, Judge. Opinion filed May 8, 1897. Reversed.

In an action brought by Aultman, Miller & Co. against W. K. Ryland, a stock of hardware, kept in South Haven, Sumner County, was attached. M. L. Ryland brought suit against the Sheriff, the plaintiff in error, to recover the attached property, claiming to own it by purchase from his brother, W. K. Ryland. It was an undisputed fact that, on the first of July, 1893, W. K. Ryland owned the property in controversy and was in possession of it. The statement of the plaintiff with reference to the transfer of the property to him, is substantially as follows :

About six o'clock on the evening of July 1, he went into the store of his brother, who called him back to the desk and said : "I have got something to tell you, and I hate awful bad to do it. I have gone as far as I can in my business, and I want to save you what I owe you." His brother then proposed to sell him his stock of hardware ; and asked him how much the indebtedness amounted to. The plaintiff told him about twenty-three hundred dollars ; and it was thereupon agreed that the plaintiff would take the stock of goods in satisfaction of the debt, and that they would go to Wellington on the next Monday morning, July 3, and have a bill of sale executed for the stock. On Monday, between four and five o'clock in the morning, they started for Wellington. In the buggy, on the road to that place, they had a further

conversation with reference to their affairs.  W. K. Ryland owned one-half of a brick building occupied by the two brothers; the plaintiff having a dry-goods store in the part kept by him, and W. K. using the other for a hardware store.  W. K. owed two notes to the South Haven Bank; one for five hundred dollars, signed by M. L. Ryland as surety, and the other for $640.  It was agreed between them, while on the way to Wellington, that W. K. Ryland should deed his half interest in the store building to M. L. Ryland in consideration of his assuming and paying these two notes.  It wae also agreed that the plaintiff should pay a lumber bill of $16.50 to Tom Hill, as a part of the consideration for the stock of goods.  When the brothers arrived at Wellington they called on George Pitts, before he was up, to draw papers for them. He went to his office and drew a bill of sale from W. K. to M. L. Ryland for the stock of hardware; a deed to M. L. for W. K.'s interest in the store-building; a deed from W. K. to his wife for their homestead in South Haven, and a deed to Wesley Nave for a house and lot in South Haven.  All these papers were executed and acknowledged by W. K. Ryland and delivered to M. L. Ryland, who afterwards procured the signature of W. K. Ryland's wife to the deeds and caused them to be recorded.  These instruments purported to transfer all the property owned by W. K. Ryland, except book accounts and notes, amounting to something more than twelve hundred dollars.  Two brothers, Elmer and Charles Slocum, had been employed by W. K. Ryland as clerks, and traveling salesmen for agricultural implements and binding twine.  According to the testimony, W. K. Ryland was indebted to them to the amount of about seven hundred dollars for wages and borrowed money.  On Saturday, July 1, he authorized them

to draw off accounts from his books, collect them, and take their pay out of what they collected. The books containing the accounts appear to have been taken to W. K. Ryland's house, and representatives of his creditors were refused by M. L. Ryland and Mrs. W. K. Ryland any information concerning the books or where they could be found. After the papers were executed, on the morning of July 3, W. K. Ryland took a train leaving Wellington at about eight o'clock and went to Iowa. He was furnished thirteen dollars for that purpose by M. L. Ryland on that morning. He remained there two or three weeks, and then returned to South Haven. The Slocums collected about twelve hundred dollars of accounts, from which they took the amount due themselves. A part of the balance was paid to M. L. Ryland for the purpose of paying other debts of W. K. Ryland. A small sum of money was paid to Mrs. W. K. Ryland and some of it was paid to W. K. Ryland after his return. Some of the accounts were closed by taking notes payable to Mrs. W. K. Ryland. W. K. Ryland also had agricultural implements, which he sold on commission. Among them were goods belonging to the Buford & George Implement Company, valued at about six hundred dollars. At the time the sale from W. K. to M. L. Ryland was agreed upon, it was understood that commission goods were to be turned over by M. L. Ryland to the owners. W. K. Ryland had given his note to the Buford & George Implement Company for the goods received from them, and M. L. Ryland claimed that these goods were included in his purchase, but after a time gave them up. The items of indebtedness for which the transfer was made, as stated by the plaintiff, were: A balance of $1,168.26, claimed to be due for payments made by M. L. Ryland in excess of his

half of the cost of the brick store-building above mentioned, which was erected in 1868; $90 paid to W. A. Clark; $27.87 for half of awning; $92.76 for taxes paid at various dates; Foster note, $100; store account, $110.46; cash, $20; interest, $674.54; the total, including the item of $16.50 paid to Tom Hill, amounting to $2,300.39. The jury, in answer to special questions, found the value of the hardware stock covered by the bill of sale to have been twenty-eight hundred dollars. The suit of Aultman, Miller & Co. was to recover $1,432.20 due them from W. K. Ryland for binding twine; and on this claim the attachment was issued, and levied by the sheriff on the stock of hardware in controversy. W. K. Ryland was also indebted to various other parties; and it is conceded that he was insolvent at the time of the transfer of his stock, and made no provision for the payment of his other creditors. A vast mass of testimony, much of it wholly irrelevant and calculated to confuse if not mislead the jury, was introduced at the trial, and is all contained in a very voluminous case-made filed in this court. At the conclusion of the testimony, the court was requested to charge the jury in writing, and counsel for both parties submitted special instructions. From those asked, the court selected a large number, which were given to the jury, and rejected many of those requested by the defendant. The instructions as given contain twenty-seven paragraphs. The third instruction asked by the defendant, and refused, reads as follows:

"While it is true that the law never presumes fraud without some evidence of it, yet, in order to show fraud, direct and positive proof is not required. The jury may infer fraud from the circumstances proven by the evidence, if in the minds of the jury they are such as show that fraud was practiced. Fraud may be proven by circumstantial evidence as well as by

direct and positive proof. It may be inferred from strong presumptive circumstances, and while it is true that the party alleging fraud must prove it, yet in civil actions, like this, the party alleging fraud is not bound to prove it beyond a reasonable doubt. It is sufficient if the fact of fraud is established in the minds of the jury by the greater weight of evidence."

Instruction ten, asked by the defendant, and refused, is as follows:

"If you find from the evidence that at the time the plaintiff claims he purchased the goods in controversy from W. K. Ryland, said W. K. Ryland was attempting to dispose of his property with the intent to defraud his creditors, or hinder or delay them in the collection of their debts, and that such intention was known to the plaintiff, or that the plaintiff had knowledge of facts sufficient to awaken the suspicion of an ordinarily prudent man and lead him to make inquiries, and further find that said M. L. Ryland in the purchase of said goods did not allow an adequate price therefor, your verdict should be in favor of the defendant, although you may find that the debt which the plaintiff claims W. K. Ryland owed him was a *bona fide* debt."

The first question submitted to the jury was: "Did W. K. Ryland on the first and third days of July, 1893, dispose, or attempt to dispose, of his property, or any part thereof, with the intent to defraud his creditors, or any of them, or hinder or delay them in the collection of their debts against him, or conceal or attempt to conceal his property or any part thereof for such purpose?" And the answer thereto was "No."

The jury returned a general verdict in favor of the plaintiff. A motion for a new trial was overruled and judgment entered on the verdict. The Sheriff brings the case here for review.

*Edward O'Bryan*, for plaintiff in error ; *J. T. Herrick*, of counsel.

*J. E. Halsell, W. W. Schwinn* and *Ivan D. Rodgers*, for defendant in error.

ALLEN, J. Though the findings of the jury are challenged as unsupported by the testimony, it is unnecessary to consider any other assignments of error than those relating to instructions given and refused. There were many circumstances given in evidence, tending to sustain the defendant's claim that the sale of the stock of hardware by W. K. Ryland to M. L. Ryland was fraudulent. It therefore became the duty of the court to instruct the jury with reference to the facts disclosed by the testimony on the part of the defendant. Special instructions were submitted by counsel for both parties. The court appears to have selected from those submitted on both sides such as were deemed correct statements of the law, and to have made up from them the charge given to the jury. It contains twenty-seven paragraphs, covering thirteen pages of the record. The first paragraph contains a fair statement of the issue. The second is to the effect that the plaintiff must show, by a preponderance of the evidence, that there was a *bona fide* indebtedness from W. K. Ryland to M. L. Ryland for the amount claimed, and that the purchase was absolute, and without any intent on the part of the plaintiff to assist in defrauding the creditors of W. K. Ryland. The third instruction is as follows :

" You are instructed that it is lawful for a debtor to prefer a particular creditor ; that, for the purpose of paying such creditor, the debtor may turn over all his property at a fair valuation, and this is not a fraud on other creditors, although the known effect of it

may be to hinder and delay other creditors in the collection of their just debts.''

In the following instructions, from the fourth to the nineteenth inclusive, the propositions contained in the second and third are repeated many times, with the further propositions, in the sixth, eleventh and nineteenth, that the sale should be made for a fair value. In these instructions are included, in various forms, the propositions: That a sale of more property than was necessary to satisfy the debt would not vitiate the transaction if the excess was reasonably necessary for the purpose of satisfying the actual debt; that the agreement to pay the debt of Tom Hill would not invalidate the plaintiff's purchase; that the law favors the vigilant creditor; that M. L. Ryland had a right to procure a payment of his debt to the exclusion of other creditors; that he might take more goods than was actually necessary to pay the debt, if he honestly believed he was taking no more than a sufficient amount; that he had a right to proceed hurriedly and secretly; that no amount of bad faith on the part of W. K. Ryland toward his other creditors would invalidate the plaintiff's title, if he himself acted in good faith and bought the goods for a fair value; that in order to find that W. K. Ryland acted fraudulently in disposing of his property, the jury must believe that he intended to retain some interest in the property sold, or to obtain some pecuniary advantage by reason of the sale; that W. K. Ryland had a right to apply his property to the payment of debts as he chose, and to give preferences among his creditors; that, if transferred for the sole purpose of paying his debts, Aultman, Miller & Co. had no right to attach the stock; that the transfer of his own homestead to his wife was not a fraud, and could not be taken into consideration in the case for

17—58 KAN.

any purpose ; that fraud is never to be presumed ; that all men are presumed to act fairly and honestly ; that while fraud vitiates everything into which it enters, the burden of proving it is upon him who asserts it ; and that the fact that some of W. K. Ryland's creditors were left wholly unpaid, and without provision for any payment to them, did not render the transaction fraudulent.   Instructions asked by the defendant, and given by the court, included the propositions : That the jury, in determining the question of fraud, might take into consideration, not only the facts and circumstances connected with the disposition of the property on the first and third days of July, but other facts and circumstances affecting the control of the property before, at and after said time, all statements made by M. L. Ryland concerning the same, and the relationship of the plaintiff and W. K. Ryland ; and that where a creditor purchases property of his debtor, knowing that he is attempting to dispose of it to defraud his creditors, and pays for the same with a debt due him, he must act in the utmost good faith, and pay adequate prices for the property purchased.

The charge as a whole impresses us as unfair and misleading.   It singles out each particular badge of fraud, and states that it is insufficient to

1. Correct instructions misleading, when.

vitiate the transaction provided certain other things stated be shown.   While most of the propositions are true as abstract statements of the law, in the form they were presented to the jury they were calculated to convey the impression that neither one of the many indicia of fraud was, in fact, of any force in the defendant's attack on the transfer of the goods from W. K. Ryland to his brother. There was much needless and misleading repetition calculated to prejudice the jury.   But, without singling

out any particular instruction given as sufficient of itself to warrant a reversal of the judgment, there was clearly error in the refusal of the court to give the third and tenth instructions asked by the defendant. Nothing of similar import was given. It is rare indeed that fraud can be proved by the direct and positive testimony of reliable witnesses. It is an almost invariable rule that it can only be deduced from a consideration of many facts and circumstances; from the conduct, statements, dealings, and surroundings of the parties, from their relationship to each other, and from the many little doings of the parties which indicate their secret motives, which as a rule are studiously concealed from those it is intended to wrong. The third instruction asked by the defendant is a fair statement of the law on this proposition, and the substance of it should have been given. Neither positive knowledge nor direct notice, on the part of M. L. Ryland, of the fraudulent purpose of W. K. Ryland, was necessary to avoid the transaction, if other facts sufficient for that purpose were established. It was only necessary that the defendant should prove knowledge of such facts as would be sufficient to awaken the suspicion of an ordinarily prudent man, and lead him to inquire into the purposes of his debtor. Such proof would be sufficient to charge the plaintiff with knowledge of all such facts as a diligent inquiry would have developed. It is said that the error in refusing this instruction is immaterial because the jury found, in answer to the first special question submitted, that W. K. Ryland was free from all fraudulent purposes. That they would so find, the court did not know, and had no right to anticipate, at the time the instructions were given. It cannot be assumed that, under correct instructions,

2. Evidence of fraud may be circumstantial.

3. Purchaser charged with knowledge of facts, when.

the jury would have found as they did; for there is an abundance of evidence in the record tending to show fraud, not only on the part of W. K. Ryland but of the plaintiff as well. As in most cases, this evidence consists mainly of circumstances, which, taken singly, although indicative of fraud, are not necessarily inconsistent with an honest purpose. The jury should have been called upon to consider care-. fully all these circumstances, and say whether, when all taken together, they proved fraud on the part of W. K. Ryland, and either knowledge, or facts putting him on inquiry, on the part of M. L. Ryland. For the errors mentioned, the judgment must be reversed and the cause remanded for a new trial.