### John Pope. v. Jonah E. Nichols.

#### No. 11.353.    (59 Pac. 257.)

1. TITLE AND OWNERSHIP—*Ejectment.* An equitable title, if the paramount one to the land, is sufficient to maintain ejectment against the holder of the legal title, and proof of the equitable title under an allegation of ownership of a legal title is not a variance.

2. ———— *Evidence of Actual Notice.* It is error to reject an offer of evidence tending to prove that the holder of a quitclaim deed from one who had received a warranty deed, and had then executed back to his grantor a bond for reconveyance, knew that the deed and bond were in fact given as security for money and not for a conveyance and reconveyance of the land.

3. ———— *"Actual Notice" Defined.* The words "actual notice" do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.

4. —— *"Actual Notice"*—*Quitclaim Deeds.*  Knowledge that a warranty deed was executed for $250, followed four days thereafter by a bond for reconveyance by the grantee back to the grantor upon the payment of the same sum, and knowledge of the record of the bond four days after the record of the deed, is actual notice, within the meaning of section 3, chapter 119, General Statutes of 1897 (Gen. Stat. 1899, § 4033), to one who holds by a quitclaim deed immediately from the grantee in the warranty deed that such deed and bond for deed were given as security for money and not as a conveyance and agreement for reconveyance of the land.

Error from Rawlins district court; A. C. T. GEIGER, judge.  Opinion filed December 9, 1899.  Reversed.

*Dempster Scott*, and *J. P. Noble*, for plaintiff in error.

*Albert Hemming*, and *Bertram & Wilson*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action of ejectment by the plaintiff in error, John Pope, against the defendant in error, Jonah E. Nichols.  Charles T. Hodges had been at one time the owner of the land.  April 19, 1892, he and his wife, Cassie J. Hodges, executed a warranty deed of the land to H. H. Obert.  This deed recited that it was made in consideration of $250.  It was recorded in the office of the register of deeds May 14, 1892.  Four days after its execution, to wit, April 23, 1892, Obert, the grantee, executed back to Hodges, the grantor, a bond for reconveyance of the same land.  This bond was in the usual form of such instruments.  It recited that Obert had agreed to sell and convey the land to Hodges upon the payment of $250, to be made on or before June 20, 1892, with interest at ten per cent. from date, and it obligated him to execute a warranty deed upon payment of the sum named.  This instrument was recorded in the office

of the register of deeds May 18, 1892, four days after the record of the deed from Hodges to Obert. The stipulated sum of $250 and interest was never paid to Obert; hence a conveyance of the land back to Hodges was never made. The following year, 1893, Obert executed a quitclaim deed of the land to the defendant in error, Jonah E. Nichols, who at once took possession and since then has continued to occupy the premises. In 1895 Hodges executed a warranty deed of the land to one A. M. Pope, who in turn executed a warranty deed of it to John Pope, the plaintiff in error. Pope thereupon brought ejectment against Nichols. Judgment was rendered against him in the district court, to reverse which he has prosecuted error to this court.

Upon the trial of the case the plaintiff offered the deposition of the original grantors, Charles T. Hodges and his wife, who testified to facts and circumstances tending to show that the transaction between them and Obert was not a sale and conveyance of the land but was a borrowing of money and the execution of a mortgage for its security, and that the deed which they executed to Obert and the bond which he executed back should be so regarded. To this deposition they attached certain letters which tended to corroborate their testimony. The offer of the deposition and letters was rejected. The plaintiff also offered the testimony of a witness named Hays to prove a conversation had by him with Nichols tending to show actual knowledge by the latter of the fact that the transaction between Hodges and Obert in the form of a deed by one and bond for deed by the other was a mortgage and not a conveyance. This offer of testimony was likewise rejected. Apparently these rulings were made because of the statute, section 3, chapter

119, General Statutes of 1897 (Gen. Stat. 1899, § 4033), which reads :

"When a deed of real property purports to be an absolute conveyance,. but is intended to be defeasible on the performance of certain conditions, such deed shall not be defeated or affected as against any person other than the grantee or his heirs or devisees, or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the register of deeds of the county where the lands lie."

It is possible that the court's rulings were made upon the theory that the plaintiff, by his own showing, had only an equitable title to the land, and could not maintain ejectment upon such kind of title ; or, if he could maintain it upon an equitable title, was precluded from doing so because in his petition he had alleged his title to be a legal one. . The case is discussed on behalf of defendant in error as though such may have been the court's view.' Neither of these reasons, however, was a valid one. In this state ejectment may be maintained upon an equitable as well as legal title ; and in the event of an allegation of legal title proof of an equitable one would not be a variance. (Gen. Stat. 1897, ch. 96, § 2 ; Gen. Stat. 1899, § 4890 ; *Stout v. Hyatt*, 13 Kan. 232 ; *Duffey v. Rafferty*, 15 id. 9 ; *A. T. & S. F. Rld. Co. v. Pracht*, 30 id. 66, 1 Pac. 319.)

As to the effect of the statute above quoted, it is true that the bond for deed by Obert to Hodges was not in the form of a defeasance of the previous absolute conveyance, but the statute does not alone except from the operation of its terms cases of notice imparted by the record of instruments of defeasance. It excepts cases of "actual notice," as well as notice imparted by the record of instruments of defeasance. The

plaintiff offered to prove actual notice but the court rejected the offer. This was error. It was also error to reject the deposition of the witnesses, the Hodges. Independently of the offer of the testimony of the witness Hayes, and taking no account of it upon the question of notice to Nichols, because it was not received in evidence, there was enough in the several instruments relating to title which were received in evidence to impart to him what the law regards as actual notice, and hence to charge him with knowledge of the real facts as disclosed by the deposition of the Hodges. The instrument under which he claimed was a quitclaim deed. The position of a purchaser of land by quitclaim deed was well set forth in *Johnson v. Williams*, 37 Kan. 182, 183, 14 Pac. 539, by Mr. Justice Valentine, who said in that case :

" We would think that in all cases, however, where a purchaser takes a quitclaim deed he must be presumed to take it with notice of all outstanding equities and interests of which he could by the exercise of any reasonable diligence obtain notice from an examination of all the records affecting the title to the property, and from all inquiries which he might make of persons in the possession of the property, or of persons paying taxes thereon, or of any person who might, from any record or from any knowledge which the purchaser might have, seemingly have some interest in the property. In nearly all cases between individuals where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given ; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received ; hence, when a party takes a quitclaim deed, he knows he is taking a doubtful title and is put upon inquiry as to the title. The very form of the deed indicates to him that the grantor has doubts concerning the title ; and the deed itself is notice to him that he is getting only a doubtful title. . . . A

person who holds real estate by virtue of a quitclaim deed only from his immediate grantor, whether he is a purchaser or not, is not a *bona fide* purchaser with respect to outstanding and adverse equities and interests shown by the records or which are discoverable by the exercise of reasonable diligence in making proper examinations and inquiries."

It is not, however, necessary in this case to limit the notice to Nichols of the outstanding title of Hodges and his grantees to that which was imparted by the quitclaim character of the deed under which he held. Possibly, in view of the statute above quoted, such quitclaim deed would not of itself be sufficient to charge him with notice. The statute seems to require actual notice in such cases as this of the defeasible character of a conveyance absolute in form. The quitclaim character of the deed, however, was one circumstance tending to impart notice. Another circumstance was the relation in point of time between the execution of the deed from Hodges to Obert, and the bond for deed from Obert back to Hodges. They were practically contemporaneous in date. Four days after Hodges conveyed to Obert the latter agreed to reconvey to Hodges. Another circumstance was a similar relation in point of time between the dates of recording the two instruments. Four days after the deed was put upon record the bond for deed was likewise recorded.

Another circumstance strongly tending to impart actual knowledge was the identity of the consideration expressed in the deed with that expressed in the bond for deed. Both were $250. It is contrary to business experience — contrary to the sense of business transactions — for a man to buy land and accept a conveyance of it for a stated sum and in four days thereafter to agree to sell the same land back to his vendor

for the same consideration. In such case the mind naturally adverts for explanation to the theory of a loan secured by conveyance and agreement for reconveyance. There is in these circumstances that which the law esteems to be actual notice; that is, there is information which it obligates a party accepting a quitclaim deed to follow up with inquiry and examination until knowledge is obtained.

Actual notice does not mean that which in metaphysical strictness is actual in its nature, because it is seldom that ultimate facts can be communicated in a manner so direct and unequivocal as to exclude doubts as to their existence or authenticity. Actual notice means, among other things, knowledge of facts and circumstances so pertinent in character as to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. (16 A. & E. Encyl. of L., 1st ed., 790 ; Wade, Notice, 2d ed., §§ 3, 4, 5, *et seq.*) In section 5 of Wade on Notice, the author says :

" There are two classes of actual notice, which for convenience may be designated as 1. *Express,* which includes all knowledge or information coming to the party to be charged, of a degree above that which depends upon collateral inference, or which imposes upon him the further duty of inquiry ; and 2. *Implied,* which imputes knowledge to the party because he is shown to be conscious of having the means of knowledge, though he does not use them. In other words, where he chooses to remain voluntarily ignorant of the fact, or is grossly negligent in not following up the inquiry which the known facts suggest."

Some other claims of error are made, but they are collateral or incidental to those above discussed, and need not be noticed. The court erred in its rulings. Its judgment is therefore reversed, and a new trial ordered.