Rich v. Downs.

---

W. H. RICH, *Appellee*, v. JOHN S. DOWNS, *Appellant.*

No. 15,915.

### SYLLABUS BY THE COURT.

1. DEEDS — *Warranty—Quitclaim—Record—Priority.* A purchaser of real estate by warranty deed whose grantor holds by quitclaim deed only will be regarded as a purchaser in good faith notwithstanding such quitclaim deed, if his grantor's title as shown by the registry record is apparently valid and clear and he has no notice of any defect in the title.

2. ———— *Same.* The owner of real estate conveyed it by warranty deed. The purchaser did not place the conveyance upon record for twelve years. While such deed was withheld from record, the same grantor was induced to execute a quitclaim deed to the land as an accommodation to a person who represented that such a conveyance was necessary to remove a cloud from the title. The grantee in such quitclaim deed placed it upon record and conveyed the land by warranty deed

to a purchaser who paid an adequate consideration therefor and did not have notice of any defect in the title or of the transaction in which his grantor obtained the quitclaim deed. *Held*, that the holder of the last-named warranty deed obtained a good title to the land, and his warranty deed would convey a good title to his grantee.

Appeal from Wichita district court; CHARLES E. LOBDELL, judge. Opinion filed November 6, 1909. Affirmed.

*Harry J. Bone,* and *J. S. West,* for the appellant.

*W. M. Glenn,* for the appellee; *Wheeler & Switzer,* of counsel.

The opinion of the court was delivered by

GRAVES, J.: W. H. Rich, on April 17, 1906, commenced this action in the district court of Wichita county to quiet his title to the land in controversy against the claims of John S. Downs, who was asserting ownership thereto. The defendant in his answer denied the claim of the plaintiff, alleged ownership and possession in himself, and prayed that his title be quieted as against the claims of the plaintiff. The plaintiff replied by a general denial. The case was tried to the court, without a jury, and the court found in favor of the plaintiff and awarded him judgment for the land. The defendant brings the case here for review.

The district court upon the trial found conclusions of fact, and made them a part of the journal entry, as follow:

"The court finds from the evidence that the three quarter-sections of land belonged to Leggett and Butler, and on March 4, 1893, they conveyed it by warranty deed to B. M. Anderson, and that such deed was filed for record in the office of the register of deeds of Wichita county on August 16, 1905; that Anderson conveyed the land by quitclaim deed to John S. Downs, the defendant, on August 2, 1905, which deed was filed for record on August 16, 1905; that after the convey-

ance to Anderson, and on December 23, 1897, the widow and devisee of Butler, together with Leggett, conveyed the land by quitclaim deed to E. A. Robison, which deed was filed for record on April 27, 1898; that Robison conveyed the land, on March 2, 1898, to Benjamin Warren, by warranty deed, which deed was filed for record on May 4, 1898, and Warren conveyed the land to W. H. Rich, the plaintiff, on October 12, 1905, by warranty deed, and that deed was filed for record on October 21, 1905; that when Leggett and Mrs. Butler conveyed the land to Robison the deed was executed with the name of the grantee blank, and they were paid $100 for the conveyance, but the evidence does not show who paid this money, except that it was not Robison, and that he had nothing at all to do with the matter except to allow his name to be inserted in the deed from Leggett and Butler and to make the warranty deed to Warren, all of which was done at the request of L. S. Dickey; that Warren, when he purchased the land, had no knowledge, so far as the evidence shows, of the prior unrecorded deed from Leggett and Butler to Anderson; that for several years the land was vacant and unoccupied, but at the time of beginning of this suit, and ever since August 16, 1905, it was in the possession of William Reese, as agent of Downs, the defendant."

As conclusions of law, it found as follows:

"That W. H. Rich, the plaintiff, by his warranty deed from Warren acquired the same title to the land which Warren had, and that Warren by his warranty deed from Robison acquired the complete title to the land, free and clear from the defect of the title of the previous unrecorded warranty deed from Leggett and Butler to Anderson; that the defendant, John S. Downs, acquiring the title of Anderson after the deed to Warren had been recorded, is in the same position as Anderson would have been if he had been the defendant and had made no conveyance to Downs."

As supplemental to and explanatory of these conclusions, it appears from the testimony that some person whom the testimony fails to identify wrote to Leggett requesting a quitclaim deed to the land in controversy, for the purpose of removing a cloud from the title. Leggett thinks this request came from one of the county

officer's of Wichita county; he thinks it came from the county treasurer or the register of deeds, but is not certain. Leggett in reply to the request wrote that he and Butler had long before conveyed the land and did not have any right or interest therein, but if it was necessary to remove a cloud from the title they would be glad to assist in any way. Subsequently they received quitclaim deeds prepared and ready to be acknowledged. They were also requested to obtain certified copies of other papers relating to the title, and $100 was sent to pay them for their trouble. The papers were duly obtained and sent by mail to the person making the request, but who it was Leggett could not state. The name of the grantee in each quitclaim deed was left blank. The deeds subsequently appeared in the possession of L. S. Dickey, the register of deeds of Wichita county. How he obtained them does not appear. The only evidence upon the subject indicates that he had no communication with Leggett concerning the transaction. Dickey induced E. A. Robison to permit his name to be written in the deeds as grantee, and also to execute a warranty deed to Benjamin Warren, jr. Robison had no interest in or knowledge of the transaction, and permitted the use of his name merely to accommodate Dickey. All the evidence upon the subject indicates that Dickey was not acting for Warren and had not had any communication with him upon the subject. Who furnished the $100 sent to Leggett, or who sent it, does not appear. Warren resided at Peoria, Ill., where he was engaged as a dealer in grain. The evidence does not show that he had any actual, personal knowledge of the condition of the title when he accepted and paid for the deed. Nor is it shown by whom the deed was delivered to him nor to whom he paid the purchase price.

There is quite an extensive correspondence and some oral evidence showing that J. C. Donnell, who was county treasurer, transacted a large amount of business for Benjamin Warren, jr., in buying real estate and

Rich v. Downs.

paying taxes, but nothing to show that the land in controversy was the subject of any of this correspondence or was considered by either of them.   From this the defendant infers that Donnell, acting for Warren, obtained the quitclaim deed from Leggett and Butler and caused Dickey to use Robison as a "straw man" for the purpose of completing a good title to Warren.   In that case Donnell must have known the entire transaction, and, being the agent of Warren, his knowledge would be imputed to Warren.   This conclusion would require a very robust interpretation of the testimony, but if the trial court had so found this court might have hesitated before disturbing the finding.   Since the trial court found the contrary, we are unable to say that there is no evidence to justify its conclusion.

It is argued with much force that Warren stands in the same attitude as though he were holding under a quitclaim deed, and should be held to the same diligence in searching the records for outstanding conveyances, liens, encumbrances and equities of all kinds, that is required of one who takes a quitclaim deed. The trouble, however, with this contention is that Warren did not take a quitclaim deed, but received a deed of warranty, for which he paid a valuable and adequate consideration.   The law relating to quitclaim deeds does not therefore apply to him.   His rights are not affected by the fact that his grantor held under a quitclaim deed only.   (*Meikel et al. v. Borders,* 129 Ind. 529; *Winkler v. Miller,* 54 Iowa 476; *Finch v. Trent,* 3 Tex. Civ. App. 568; *Moelle v. Sherwood,* 148 U. S. 21; *United States v. California &c. Land Co.,* 148 U. S. 31; *Stanley v. Schwalby,* 162 U. S. 255; *Babcock v. Wells,* 25 R. I. 23.)   In a note to *Babcock v. Wells* in 105 Am. St. Rep. 848, 854, a large number of cases upon various questions relating to quitclaim deeds are collected.

At the time Warren received his warranty deed from Robison the record showed a quitclaim deed from Leggett and Butler to Robison, which was the only conveyance of any kind disclosed by the record in which they

were grantors. At this time Warren does not appear to have had notice that there was any infirmity in his grantor's title. Under such circumstances it seems that he acted with at least ordinary care and prudence in taking the warranty deed, and ought to be protected against an unrecorded conveyance. The deed of B. M. Anderson had been negligently withheld from record for twelve years. A man who ignores the requirements of the registry laws in this manner is not entitled to any great consideration if he suffers thereby. By negligently withholding a deed from record an invitation is given to those so disposed to mislead and defraud whoever may thereafter wish to deal with the land conveyed. Such a practice should not be encouraged.

Finally, it is urged that the defendant placed his deed on record five days before the deed to the plaintiff was recorded; but that fact seems to be immaterial. The defendant held under a conveyance from Anderson, who had nothing to convey, his rights having been extinguished by the recorded conveyance to Warren; and, since Warren held a good title, he could convey it to the plaintiff, which he did.

We think the conclusions of the trial court are justified under the facts. The judgment is affirmed.