·Kuhn v. Wise.

L. M. KUHN, *Appellee*, v. EDMUND O. WISE, *Appellant*.

No. 18,413.

SYLLABUS BY THE COURT.

1. SALE — *Under Fraudulent Power of Attorney — Purchaser Chargeable with Notice.* Where a power of attorney to sell and convey real estate is fraudulently obtained from the owner of the property, and a sale is made purporting to be under the power to a person having knowledge of circumstances sufficient to excite the suspicions of a prudent person and put him upon inquiry, he will be charged with knowledge of the facts which a diligent inquiry would have disclosed.

2. ———— *Same.* The evidence is examined and it is held to be sufficient to authorize a finding that the grantee in this case is chargeable with notice of the fraud.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed October 11, 1913. Affirmed.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield, for the appellant.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a judgment setting aside a conveyance made under a power of attorney fraudulently obtained from the plaintiff. The defendant refused to make a reconveyance, upon the claim that he was an innocent purchaser not chargeable with notice of the fraud.

J. Herbert Peairs made a proposition to the plaintiff to negotiate sales of lots in an addition to the city of Winfield owned by her, and she verbally agreed that he might do so at a net price to her of $150 per lot for one part and $100 per lot for another part of the addition, sales to be made upon an installment plan, Peairs to receive the first payment down of $10 per lot, and fur-

ther weekly payments to be divided until he should receive the excess over the prices named. Having agreed upon these terms, the plaintiff requested Peairs to go to an office designated by her and have the agreements written. He went to another office, however, to have the writing done, and returned with a contract in which she saw nothing wrong. Later in the same day, about dusk, Peairs came to her again and asked her to go to a notary public to execute the papers. At the notary's office the plaintiff read one of several papers presented to her, and then inquired if the others were the same. Peairs said they were, whereupon she signed them. She identified a contract which recited that it was made in duplicate, for the sale of lots at $150 each, and which embodied the terms agreed upon, and testified that she signed it. She also admitted the execution of another contract in duplicate, of like import, relating to the lots the net price of which was to be $100 each. Another paper purporting to be a power of attorney giving to Peairs general authority to sell and convey lots in the addition in her name appears also to have been signed by her. She admitted her signature to the power but denied that any mention of it was made or that her attention was called to it, and denied any knowledge whatever concerning it. The evidence shows that she never agreed to give any power to Peairs other than that expressed in the agreement referred to, which did not include a power to make conveyances, and such a power was never suggested. Peairs advertised in a local paper that the property was for sale at $150 per lot and upwards, upon an installment plan, and afterwards offered the six lots in controversy to the defendant for $150 per lot, and asked him to inspect them. After some further negotiations Peairs asked the defendant to make an offer, which he did, offering $25 per lot, which Peairs accepted, and executed a deed accordingly as attorney in fact for the plaintiff, but inserted a consideration of

$750. When the deed was executed Peairs produced and showed the power of attorney, and the defendant was advised by counsel that it was sufficient, but that it must be recorded: Peairs promised to have it recorded immediately, and the deed was then delivered. Payment of the $150 purchase money was not made until a few days later, and the defendant withheld his deed from record awaiting record of the power. In a short time the defendant inquired of Peairs if the power had been recorded and was answered in the negative, but with a further promise to have it recorded at once. He repeated this promise when the defendant made another inquiry, saying that he was going right down to record it. Instead of doing so he went to a hotel, where the defendant found him later, and he said he would attend to recording the power after dinner. The defendant refused to wait longer, and took the power from Peairs' hand and filed it for record himself. About the same time Peairs cautioned the defendant, saying that if any persons inquired about the lots "it was none of their business—just keep it to yourself."

About four months after signing the contracts the plaintiff learned that Peairs had sold some of the lots. She then called upon him and he informed her that the money received—$150—was only the first installment of the consideration, and induced her to take his note for the amount collected. Soon afterwards she learned the fact that the sale had been made for that price and that a power of attorney purporting to be signed by her was on record. Soon afterwards she informed the defendant of the facts, tendered the amount of the money he had paid to Peairs, presented a quit-claim deed for his signature, and demanded a reconveyance, which was refused.

When the defendant was informed of the facts he said to the plaintiff's representative that he had been advised that it was necessary that the power should be recorded and that he suspected there was something

wrong the way Peairs acted about it, and that it made him suspicious.

The plaintiff's evidence tended to prove that the lots were worth $150 apiece. The evidence offered by the defendant tended to prove their value from $25 to $50 each. In the advertisement the price was stated at $150, and that was the price first asked by Peairs in negotiating with the defendant. The evidence of the circumstances under which the signature of the plaintiff to the several papers was obtained was undisputed, and it is a reasonable inference that at the same time her signature was fraudulently obtained to the power. This conclusion is not disputed, but the argument is that the defendant should be protected as an innocent purchaser for value without knowledge of the facts. Actual knowledge is not necessary; knowledge of circumstances sufficient to excite the suspicions of a prudent person and put him upon inquiry is as a general proposition equivalent to knowledge of the facts which a diligent inquiry would have disclosed. (*Phillips v. Reitz,* 16 Kan. 396; *McDonald v. Gaunt,* 30 Kan. 693, 2 Pac. 871; *Morse v. Ryland,* 58 Kan. 250, 48 Pac. 957.)

The principle was applied, in the cases cited, to sales made in fraud of creditors, but it is equally applicable to sales made in fraud of the owner, under a power or otherwise. (*Baldridge v. Scott,* 48 Tex. 178.) Purchasers in good faith, however, under a power apparently sufficient will be protected; participation in the fraud or notice of it by the purchaser must appear. (*Wolfe v. Hines,* 93 Ga. 329, 20 S. E. 322; 31 Cyc. 1151.)

If the facts concerning the defendant's knowledge were such as would prompt a prudent man to inquire concerning Peairs' authority to sell and make conveyance, then he is chargeable with notice of the fraud, for an inquiry of the owner would have disclosed the absence of such authority. Whether the circumstances were sufficient for this purpose was a question of fact,

Kuhn v. Wise.

and if the affirmative finding of its existence, necessarily included in the judgment, is supported by the evidence, it can not be set aside here. It should also be presumed, in support of the judgment, that the court found that the price paid by the defendant was inadequate. There is ample evidence to that effect, although there is some evidence to the contrary.

Without holding that inadequacy of consideration alone would avoid the conveyance, it is a circumstance that should be considered, along with the suspicions aroused in the defendant's mind by the agent's conduct; and the fact that the power was withheld from the record contrary to promise and to the statutory requirement, the fictitious consideration, and acceptance of an offer so far below the price named, are among the circumstances which the court must have considered, together with the appearance and conduct of the witnesses, and it can not be held that the finding that the defendant was chargeable with notice of the fraud is not sustained by competent evidence.

The defendant made no expenditure upon the property before the demand for reconveyance and offer to return the consideration. In good conscience he ought to have complied with the demand.

The judgment is affirmed.