No. 42,004

JOHN W. LANE and MARIETA LANE, Husband and Wife, *Appellees*, v. NORA FAYE COURANGE, CLARENCE J. COURANGE, and LEON WHITEMAN and RUBY WHITEMAN, if living, or if dead, then the unknown heirs, executors, administrators, devisees, trustees, creditors and assigns of such defendants as may be deceased; the unknown spouses of the defendants and each of them and the unknown guardians and trustees of such of the defendants as are minors or in anywise under disability, *Appellants*.

(359 P. 2d 1115)

Opinion filed March 4, 1961.

*Hugh D. Mauch,* of Great Bend, argued the cause, and *Melvin O. Nuss* and *Vernon L. Nuss,* both of Great Bend, were with him on the briefs for the appellants.

*Robert E. Southern,* of Great Bend, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the trial court's judgment that plaintiffs' title to certain real property be quieted against defendants, Leon and Ruby Whiteman, and excluding their mortgage on such real estate.

No question as to the pleadings is presented and we shall therefore proceed to a consideration of the pertinent facts which, briefly summarized, are: The real property in question was owned by the Couranges and on March 14, 1953, they executed their promissory note to Leon Whiteman in the sum of $1,550 and as security gave a mortgage thereon. This mortgage was not recorded until May 28, 1959. A note and mortgage payable to and securing a loan by the Lewis Investment Company to the Couranges, which had been timely recorded, was paid by plaintiffs when they purchased the real property from the Couranges on January 22, 1957. The deed from the Couranges to plaintiffs was recorded on January 22, 1957.

Because of some additional loans made by Mr. Whiteman to the

Couranges while they owned the real property, on November 17, 1955, they executed a new note in the sum of $2,500 to Mr. Whiteman which was to satisfy the $1,550 note and all of their other obligations to him, but no new mortgage therefor was executed. The record reflects evidence that is so highly conflicting no useful purpose will be served by sifting out those parts supporting the trial court's findings. They were:

"The matter in litigation is whether or not the plaintiffs in this action, John W. Lane and Marieta Lane, husband and wife, had actual notice of a mortgage executed in 1953 in which the defendants Courange mortgaged certain property to the defendant Leon Whiteman, at the time that the plaintiffs Lane purchased the property from the defendants Courange.

"At this time the 1953 mortgage was in existence and was held by the defendant Whiteman, but the mortgage was not then recorded, and was not recorded until the year 1959, and the papers evidencing the purchase were executed on or about the 22nd of January, 1957.

"The burden of proving the actual notice in this case is upon the defendant Whiteman. The defendant Whiteman, from the evidence, is revealed as being a businessman at all times mentioned here, engaged in the car business, in the City of Hoisington. From his testimony about securities that he sometimes held, the transactions, together with the securities that he must have been familiar with as a car dealer, the court finds that he was generally familiar with business practices. There is nothing from the testimony or the demeanor of the witnesses Lane or Courange to indicate to the court that they were familiar with business practices or law.

"The court does not understand a businessman holding a real estate mortgage, making request that something be done about it, and nothing being done, and waiting for a period of approximately six years to protect himself by putting a mortgage of record, if he in fact felt that the purchaser of this property had actual notice of the existence of the mortgage at the time of the sale of the property. The court feels that is only consistent with the recognition on the part of the defendant Whiteman that actual notice of this mortgage was not made evident to the purchaser Lane at the time of the purchase.

"This is a case where generally the evidence of plaintiff Lane and the defendant Courange is consistent each with the other, and the evidence of defendant Whiteman is inconsistent in the important parts to the evidence of these other individuals. Without going into enumerated findings, the court is believing and accepting the evidence of plaintiff Lane and defendant Courange as to such testimony in conflict with the testimony of defendant Whiteman.

"It is the finding of the court that the plaintiffs John W. and Marieta Lane at the time of the purchase of the property involved did not have actual notice of the existence of the Whiteman mortgage and that consequently that mortgage is not a lien upon the real estate herein involved, and the title is accordingly quieted as to said real estate in favor of the plaintiffs and against the defendants."

At the time plaintiffs purchased the real property on January 22, 1957, they had not seen but they knew of the $2,500 note. Plaintiffs did not learn of any mortgage to secure a debt owing to the Whitemans by the Couranges until they wanted to negotiate a loan from the Hoisington Federal Savings and Loan Association. Since this appeal is concerned only with plaintiffs' purchase of the real property on January 22, 1957, the last-mentioned loan is of no consequence herein.

The only question presented by this appeal is whether plaintiffs' knowledge or notice of Whitemans' note was sufficient to require further inquiry by them to ascertain the existence of the Whitemans' unrecorded and undisclosed mortgage.

G. S. 1949, 67-223, relating to the recordation of instruments conveying or affecting real estate is the applicable statute. It reads:

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

The Whitemans cited the following rule of law as to notice contained in *Pope v. Nichols*, 61 Kan. 230, 59 Pac. 257:

"Actual notice means, among other things, knowledge of facts and circumstances so pertinent in character as to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." (p. 236.)

The above is the only possible manner whereby notice could have been imparted to plaintiffs under the facts of this case. However, the Pope case can easily be distinguished from our present case by reason of the documents there concerned and a recordation. In support of their contention as to the proper interpretation of the words "actual notice," Whitemans also cite *Faris v. Finnup*, 84 Kan. 122, 113 Pac. 407, and *Edwards v. Myers*, 127 Kan. 221, 273 Pac. 468, but the Faris case better supports the trial court's findings and determination in our case than it does the Whitemans' contention. While the result in the Edwards case appears to be the one the Whitemans are here seeking, the evidence and circumstances of that case supported entirely different findings of fact. It was there held:

"The 'actual notice' mentioned in . . . 67-223 may be express or implied. It is implied when it consists of knowledge of facts so informing that a reasonably cautious person would be prompted to further inquiry, which further inquiry would inform him of the outstanding unrecorded conveyance." (Syl. ¶ 2.)

The facts in *Hoult v. Rich*, 161 Kan. 587, 170 P. 2d 834, are that the Hoults purchased from D. R. Lauck a southwest quarter section

of land adjacent to U. S. highway 54 which adjoined a previously purchased southeast quarter where they lived. Sam and Bessie Rich, and Max Woodburn, partners doing business as the "Rich Sign Company," hereafter called the company, had erected advertising signs on the southeast quarter but had promptly removed them when the Hoults purchased the land and requested the company so to do. The Hoults subsequently bought the second, or southwest, quarter and after about five months, they requested the company to remove therefrom some fifteen of their advertising signs. The signs were not removed. The company's excuse was that no help was then available but the signs would be removed after the war. A quiet title action was commenced and a few months later the company sent a rental check to the Hoults who neither cashed nor returned the check. The company defended on the ground of open, notorious and peaceable possession under their unrecorded written contract with D. R. Lauck. They contended the Hoults had actual notice of defendant's possession prior to their purchase and acquired the southwest quarter subject to defendant's rights. It was conceded that defendant's written contract with Lauck was not recorded and the Hoults had notice of the signs on the southwest quarter before their purchase thereof.

The Hoult decision quotes from the statute and from the Pope, Faris and Edwards cases. Briefly summarized, the discussion pointed out that a realistic approach as to whether the Hoults should have made further inquiry under the circumstances required a consideration of events in their chronological unfoldment. The presence of the signs would ordinarily require further inquiry concerning rights to erect and maintain them, but it is elementary that such presumption of "actual notice arising from circumstances" is rebuttable. (p. 590.) As a matter of law, the removal of the signs by the company upon the previous request by the Hoults, without any assertion of rights by the company, would afford a circumstance for believing they would likewise remove the signs from the second, or southwest quarter. That was a circumstance to be considered along with all other facts in determining whether the Hoults exercised reasonable diligence in their duty to inquire further respecting the signs. While the Hoults did not make inquiry of the company prior to purchasing the second quarter section, immediately thereafter they requested removal of the signs which the company agreed to do after the war, but no mention was made of the unrecorded

contract or any right the company had under it. No factual basis existed for assuming such right would have been asserted and the court could not, as a matter of law, assume that the company would have done so. Neither could any basis be found for the company's contention that a previous inquiry would have led the Hoults to the unrecorded contract. This court's conclusion on that point was:

"It probably would be more accurate to say, as a matter of law, that under the particular facts here presented a previous inquiry would have been futile. We need, however, not go that far. It is sufficient to say the record presented a fair question of fact on that point for the determination of the trial court." (p. 591.)

See, also, *Penrose v. Cooper*, 88 Kan. 210, 128 Pac. 362.

When applied to the facts of our present case, the discussion in the Hoults opinion compels us to conclude that at the time plaintiffs purchased the real property, they were under no obligation to inquire further beyond the records in the register of deeds' office because the only knowledge or information they had was that Whitemans held a $2,500 personal promissory note of the Couranges, and under the statute and the cases discussed, this knowledge could not have put them on actual notice which required further inquiry. The inescapable result is that the trial court properly quieted plaintiffs' title. Other contentions of the Whitemans have been considered but they appear not to be sufficient to justify disturbing the trial court's judgment.

Affirmed.