(906 P.2d 167)
No. 72,683

MAURICE F. SCHWALM AND ANN SCHWALM, *Appellants*, v. GARY DEANHARDT, *Appellee.*

Opinion filed November 22, 1995.

*James D. Griffin*, of Blackwell Sanders Matheny Weary & Lombardi L.C., of Overland Park, for appellants.

*Douglas Lancaster* and *Charles W. Hess*, of Bryan Cave L.L.P., of Overland Park, and *Mark A. Jess*, of Bryan Cave L.L.P., of Kansas City, Missouri, for appellee.

Before ELLIOTT, P.J., GERNON, J., and D. KEITH ANDERSON, District Judge, assigned.

ELLIOTT, J.: Plaintiffs Maurice and Ann Schwalm appeal the trial court's granting of defendant Gary Deanhardt's motion for involuntary dismissal of plaintiffs' quiet title action. We reverse.

This is, factually, a rather bizarre case. The Schwalms owned a rental home they wished to sell. On January 28, 1993, they agreed with Michael Eddins to sell the house to Eddins in the name of the G.E. Trust No. PV 16-40 Trust (Trust). Eddins was to place $5,000 in escrow to cover foundation repairs, and plaintiffs were to carry the purchase price at 7% interest.

The next day, plaintiffs signed a quitclaim deed in favor of the Trust and Eddins signed a mortgage as trustee. Plaintiffs gave Eddins the deed and the mortgage; the parties do not agree what Eddins was to do next. Regardless of plaintiffs' intent, Eddins recorded only the deed on January 29, 1993.

That same day, Eddins approached Gary Deanhardt with an investment opportunity—invest $38,500 in the Schwalm property for an annualized return of 20%. Eddins represented that *he* owned the property, that there were no existing loans against the property, and that Deanhardt's security for the investment would be a first mortgage on the property.

Deanhardt balked at the opportunity, so Eddins sweetened the pot by shortening the payout on the "loan"—thereby raising the rate of return.

Without *any* investigation into Eddins, the property, or the recorded ownership of the property, Deanhardt, on February 5, 1993, gave Eddins his personal check. At Eddins' request, the check was made payable to Eddins personally, rather than to the Trust. In return, Eddins gave Deanhardt a note and mortgage, both in the name of the Trust and both dated January 29, 1993.

After receiving Deanhardt's check, Eddins recorded *both* the Schwalm mortgage and the Deanhardt mortgage. Unfortunately for the Schwalms, the Deanhardt mortgage was recorded 0.7 seconds before theirs.

The Schwalms obtained a judgment against Eddins, reconveying the property to them; they then brought this quiet title action against Deanhardt. At the close of plaintiffs' evidence in the bench trial, the court granted Deanhardt's motion for involuntary dismissal. See K.S.A. 60-241(b).

On appeal, plaintiffs stipulate to the trial court's findings of fact and also to the truth of Deanhardt's testimony and all documents supporting Deanhardt's mortgage interest in the house. Accordingly, the question of whether Deanhardt had notice of the Schwalms' mortgage becomes one of law. See *Stith v. Williams*, 227 Kan. 32, Syl. ¶ 2, 605 P.2d 86 (1980).

Among the trial court's conclusions of law were: Deanhardt took Eddins' mortgage without notice of the Schwalm mortgage, under either the common law or K.S.A. 58-2223; Deanhardt had no duty to investigate, and even if the duty were there, a reasonable investigation would not have revealed the Schwalm mortgage.

"Actual notice," as used in K.S.A. 58-2223 and its predecessors, has long been understood to mean either express or implied notice.

" 'It is implied when it consists of knowledge of facts so informing that a reasonably cautious person would be prompted to further inquiry, which further inquiry would inform him of the outstanding unrecorded conveyance.' " *Lane v. Courange*, 187 Kan. 645, 648, 359 P.2d 1115 (1961) (quoting *Edwards v. Myers*, 127 Kan. 221, Syl. ¶ 2, 273 Pac. 468 [1929]).

Among other things, actual notice includes knowledge of circumstances to enable reasonably prudent persons to investigate and ascertain the ultimate facts. *Lane*, 187 Kan. at 648. See *Pope v. Nichols*, 61 Kan. 230, 236, 59 Pac. 257 (1929).

No one disputes that Deanhardt did not have express actual notice of plaintiffs' mortgage. The question is whether a duty arose for Deanhardt to inquire further and whether that inquiry would have revealed the Schwalms' mortgage. If so, he may be charged with constructive/implied knowledge of that mortgage.

The trial court ruled Deanhardt had no duty to investigate matters. But Deanhardt *is* charged with constructive notice of the quit-claim deed from plaintiffs to the Trust, because that deed was recorded. See K.S.A. 58-2222. The deed was recorded the same day Eddins first approached Deanhardt with the investment opportunity. Other circumstances surrounding the investment were at least suspicious: the extremely high rate of return offered; Eddins' claim he did not like banks because they did not move fast enough; and Eddins' request for a check made personally to him, even though the property, note, and mortgage were all in the name of the Trust.

*Kuhn v. Wise*, 90 Kan. 583, 135 Pac. 571 (1913), is a common-law bona fide purchaser (BFP) case, but the analysis is essentially the same as for the constructive notice provisions of K.S.A. 58-2223. *Kuhn* held the somewhat compelling facts surrounding the transaction would prompt a prudent person to inquire further. 90 Kan. at 585-86. And other cases have dealt with a buyer's or mortgagee's duty to inquire, even though an instrument is unrecorded. *Lane v. Courange*, 187 Kan. 645, 650, 359 P.2d 1115 (1961) (buyers were under no obligation to inquire beyond the records in the register of deeds office); *Hoult v. Rich*, 161 Kan. 587, 591, 170 P.2d 834 (1946) (seller's contract with sign company was unre-

corded); *Harvester Co. v. Myers,* 86 Kan. 497, 508, 121 Pac. 500 (1912) (recorded title was in the name of only one of four brother owners).

In the present case, the Schwalms rented their property, and it was occupied at pertinent times. Under *Myers* and *Hoult,* Deanhardt was under a duty to at least inquire as to the tenants' interest in the property. Whether this would have led to any meaningful information is another question.

Further, Deanhardt had more than mere knowledge of a note, as in *Lane.* He knew he was offered a high rate of return, which Eddins voluntarily increased; he knew he paid Eddins personally, even though the Trust owned the property; and he is charged with the knowledge Eddins received and recorded a quitclaim deed from the Schwalms just the day before the investment opportunity was offered to him.

Perhaps more compelling than what Deanhardt knew is what he chose *not* to know: He did not visit the property, other than to drive by, and, therefore, did not know the city had posted a condemnation sign on the front door; he did not search the recorded instruments; he did not order a title search; he did not inquire into Eddins' background, financially or otherwise; he did not request an appraisal; he did not inquire into the validity of the Trust; and he did not request proof of property insurance.

The circumstances surrounding Deanhardt's "investment" should cause a reasonably prudent person to investigate. Deanhardt had a duty to further inquire into Eddins' right to mortgage the property.

The trial court erred in ruling no duty existed. Although the trial court erred in this ruling, the error could be harmless if such an inquiry would be futile. See *Lane,* 187 Kan. at 650. On this issue, the trial court ruled that investigation would have provided no notice of the Schwalms' mortgage.

*City of Arkansas City v. Anderson,* 15 Kan. App. 2d 174, 183, 804 P.2d 1026, *rev. denied* 248 Kan. 994 (1991), held that buyers do not conduct a diligent inquiry where they failed to pursue numerous avenues of inquiry. *Anderson,* of course, is a BFP case rather than an unrecorded instrument case. Plaintiffs also rely on

*Gray v. Zellmer*, 66 Kan. 514, 516, 72 Pac. 228 (1903), and *Harvester Co. v. Myers*, 86 Kan. at 508.

Several other cases deal with what constitutes a reasonable inquiry when instruments are unrecorded: *Froelich v. United Royalty Co.*, 178 Kan. 503, 508, 290 P.2d 93 (1955) (ordinary persons should have investigated further); *Penrose v. Cooper*, 88 Kan. 210, 218, 128 Pac. 362 (1912) (inquiry was sufficient).

These cases teach that Deanhardt at least should have checked into recorded instruments and should have inquired of the tenants in possession, neither of which he did. These inquiries, however, would not have turned up evidence of the Schwalms' mortgage.

The question here is whether something in the quitclaim deed gave rise to a duty to further investigate. The quitclaim deed was to the Trust and was recorded the same day Eddins first proposed the instrument to Deanhardt.

In *Johnson v. Williams*, 37 Kan. 179, 182-83, 14 Pac. 537 (1887), the court held:

"We would think that in all cases, however, where a purchaser takes a quitclaim deed he must be presumed to take it with notice of all outstanding equities and interests of which he could by the exercise of any reasonable diligence obtain notice from *an examination of all the records affecting the title to the property,* and from *all inquiries which he might make of persons in the possession of the property,* or *of persons paying taxes thereon,* or *of any person who might, from any record or from any knowledge which the purchaser might have, seemingly have some interest in the property.* In nearly all cases between individuals where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received; hence, when a party takes a quitclaim deed, he knows he is taking a doubtful title and is put upon inquiry as to the title. The very form of the deed indicates to him that the grantor has doubts concerning the title; and the deed itself is notice to him that he is getting only a doubtful title. Also, as a quitclaim deed can never of itself subject the maker thereof to any liability, such deeds may be executed recklessly, and by persons who have no real claim and scarcely a shadow of claim to the lands for which the deeds are given; and the deed may be executed for a merely nominal consideration, and merely to enable speculators in doubtful titles to harass and annoy the real owners of the land; and speculators in doubtful titles are always ready to pay some trifling or nominal consideration to obtain a quitclaim deed. This kind of thing should not be encouraged." (Emphasis added.)

In short, the holder of a quitclaim deed is *not* a BFP with respect to adverse equities discoverable by reasonable diligence. 37 Kan. at 183. The steps required by *Johnson* would have led Deanhardt to the Schwalms. *Johnson* was followed in *Pope v. Nichols*, 61 Kan. 230, 234-35, 59 Pac. 257 (1899), but since then, the *Johnson* rule has been diluted.

In *Eger v. Brown*, 77 Kan. 510, 514, 94 Pac. 803 (1908), the court held the tender of a quitclaim deed merely opens the eyes of the purchaser. In *Rich v. Downs*, 81 Kan. 43, 105 Pac. 9 (1909), the grantors' warranty deed remained unrecorded for 12 years. Meanwhile, the grantee of a quitclaim deed gave a warranty deed. 81 Kan. at 44-45. The court held the ultimate grantee's rights were not affected by the fact his grantor held only under a quitclaim deed. 81 Kan. at 47. See also *Cassity v. Cassity*, 147 Kan. 411, 418, 76 P.2d 862 (1938), which commented that *Johnson* dealt with outstanding equities discoverable from records in the office of the register of deeds.

We are, therefore, left with two rules: A purchaser taking a quitclaim deed is under a duty to search up the chain of title; and a purchaser taking a warranty deed from a quitclaim holder takes free and clear of any cloud accompanying the quitclaim deed. And see *Faris v. Finnup*, 84 Kan. 122, 127-28, 113 Pac. 407 (1911) (West, J., concurring) (if grantee in a quitclaim deed is put on notice, he or she must certainly take with the same notice as grantor had, and should take with the same burden).

Deanhardt is charged with knowing Eddins had title only by a quitclaim deed, and he relied on Eddins' first mortgage as security for his "investment." Accordingly, Deanhardt must be presumed to have taken the mortgage with notice of all outstanding equities of which he could have obtained notice with reasonable diligence. Further, the quitclaim deed should have opened Deanhardt's eyes for facts and for clues as to the apparent title.

Had Deanhardt conducted a reasonably diligent search, he would have been led to the Schwalms as the last owners with a clean title; he should then have inquired of plaintiffs why they conveyed with only a quitclaim deed.

The trial court erred in ruling a reasonable investigation would not have led Deanhardt to information concerning the Schwalms' mortgage.

Reversed.